## John Cobb et al. *v.* Henry Duke et al.

1. Chancery; what amounts to waiver by defendant, of objections to the premature filing of the bill.—Where a bill in equity has been filed in pursuance of an agreement between the complainant and one of the defendants, that they would co-operate in procuring the relief prayed for, the latter cannot afterwards object that the defendants were in no default in complying with their engagement, and that therefore the bill was prematurely filed.

2. Same: jurisdiction: chancery court will not render a decree in personam, for unsatisfied balance due mortgagor.—It is a well-settled rule that upon a bill to foreclose a mortgage, a court of chancery has no jurisdiction to render a decree *in personam* against the mortgagor, for an unsatisfied balance, after the mortgaged property has been exhausted.   And the rule is the same where a vendor who has executed a bond to convey title, upon the condition that the purchase-money is paid, files his bill to subject the equitable interest of the vendee in the land, to the payment of the purchase-money.   (See *Starke v. Mercer*, 3 How. 377; *Turner* v. *Hicks*, 4 S. & M. 294; *Dollahite* v. *Orne*, 2 Ib. 590; *Mosby* v. *Wall*, 23 Miss. 81.)

3. Same: same: same: this rule not changed by reason of doubts and embarrassments as to the title.—That there are doubts and embarrassments in reference to the title of the land, is no sufficient reason why a court of equity, in foreclosing a mortgage on it, or in enforcing the vendor's lien for the purchase-money, should render a decree *in personam* against the mortgagee or vendee for an unsatisfied balance, after the proceeds of the land have been exhausted.

4. Promissory note: legal title to: when payable to bearer passes by delivery.—The legal title to a promissory note or bond, payable to bearer, passes to an assignee by delivery.   (See *Craig* v. *City of Vicksburg*, 31 Miss. 216.)

5. Same: husband and wife: joint assignment by: passes legal title to note payable to the wife.—The joint assignment of husband and wife, is sufficient to pass the legal title to a promissory note payable to the wife.   (See *Work* v. *Glaskins*, 33 Miss. R. 539.)

6. Chancery: when notice of taking an account not necessary.—Where an account ordered by the chancellor, is to be taken upon the facts as they appear in the pleadings, it is unnecessary for the commissioner to give notice to the parties, of the time and place of stating it.   (See *Knox* v. *Bank of U. S.* 26 Miss. 656; *Felder* v. *Wall*, Ib. 595; *Nebbett* v. *Cunningham*, 27 Ib. 292.)

Error to the District Chancery Court of Hernando.   Hon. James F. Trotter, vice-chancellor.

*Watson* and *Craft*, for plaintiff in error,

Cobb et al. *v.* Duke et al.

Cited *McAllister* v. *Moye*, 30 Miss. 258 ; *Eckford* v. *Gates*, Ib. 273; *Graham* v. *McCampbell*, Meigs R. 52 ; *Turner* v. *Hicks*, 4 S. & M. 300 ; *Haley* v. *Bennett*, 5 Porter's R. 452; *Starke* v. *Mercer*, 3 How. 381; 3 John Ch. R. 331; 5 Cow. 81; *Speight* v. *Porter*, 26 Miss. 286 ; *Craig* v. *City of Vicksburg*, 31 Miss. 216 ; *Stokes* v. *Winslow*, Ib. 518.

*Featherson* and *Harris*, for defendants in error,

Cited *Bacon* v. *Ventress*, 32 Miss. R. 158; *Felder* v. *Wall*, 26 Ib. 595 ; *Caleb* v. *Martin*, 1 How. 558; *McRea* v. *Walker*, 4 Ib. 455; *Barnes* v. *McGee*, 1 S. & M. 208 ; *City of Natchez* v. *Vandervelde*, 31 Miss. R. 706 ; *Echols* v. *Hammond*, 30 Ib. 177 ; *Cathcart* v. *Robinson*, 5 Pet. 263 ; *Russell,* v. *Clark*, 7 Cranch, 69 ; *Chinn* v. *Hide*, 1 Munf. 63 ; *McRaven* v. *Forbes*, 6 How. 569 ; *Miami Ex. Co.* v. *U. S. Bank*, Wright's R. 249.

*Clapp* and *Strickland*, on same side,

Cited *Turner* v. *Hicks*, 4 S. & M. 184 ; *Parks* v. *Kelley*, 10 S. & M. 184 ; *Wilkins* v. *Humphrys*, 1 Cushm. 313 ; *Hays* v. *Hall*, 4 Porter, 388 ; *Tyler* v. *McCardle*, 9 S. & M. 230 ; *Coffin* v. *Cooper*, 14 Ves. 205 ; *Hepburn* v. *Dunlap*, 1 Wheat. 179 ; *Clinton* v. *Robinson*, 2 John. 596 ; *Brown* v. *Huff*, 5 Paige, 235 ; *Hawk* v. *Greensweig*, 2 Barr, 295 ; 2 Story's Eq. § 742 to 769 ; *Glascock* v. *Robinson*, 13 S. & M. 85 ; *Felder* v. *Wall*, 4 Cushm. 595 ; *Nebbett* v. *Cunningham*, 5 Ib. 292 ; *Servis* v. *Beatty*, 3 George, 52 ; *State of Connecticut* v. *Sheridan*, 1 Clark's Chy. 534 ; *Palmer* v. *Richardson*, 3 Strobh. Eq. R. 16 ; *Cathcart* v. *Robinson*, 5 Pet. 278 ; *Hawley* v. *Cramer*, 4 Cow. 717 ; 2 Bibb, 435 ; *Fisher's Heirs* v. *Kay*, Ib. 434 ; *Jones* v. *Shackelford*, Ib. 412 ; 1 Story's Eq. 81–90 ; Ib. 437, 438 ; 2 Daniels' Chy. Pr. 82 ; *Taylor* v. *Merch. Fire Ins. Co.* 9 How. (U. S.) 390 ; Mitf. Eq. Pl. 112 ; Story's Eq. Pl. § 33 ; *Boyce's Exr.* v. *Grundy*, 3 Pet. 245 ; *Pearce* v. *Nashville*, 10 Yerg. 179 ; *Am. Ins. Co.* v. *Fisk*, 1 Paige, 96 ; *Rathbon* v. *Warren*, 10 John. R. 595 ; *Barnes* v. *Loyd*, 1 How. 584; *Cobb* v. *Martin*, Ib. 558; *McRae* v. *Walker*, 4 Ib. 455 ; *Nevitt* v. *Gillespie*, 1 Ib. 110 ; *Bacon* v. *Cohea*, 12 S. & M. 525 ; *Marsh* v. *Mandeville*, 6 Cushm. 127 ; *Echols* v. *Hammond*, 1 George, 177 ; *Mackreth* v. *Symmons*, 15 Ves. 384; Sugd. Vend. 387 ; 4 Kent. Com. 157 ; 2

Story's Eq. 470; *Garson* v. *Green*, 1 John. Ch. R. 309; 4 B. Munroe, 132.

HANDY, J., delivered the opinion of the court.

This bill was filed by the defendants in error, as assignees of certain notes given for the purchase-money of lands, to subject the lands to the payment of the purchase-money.

The material facts necessary to be taken into view appear to be as follows. In November, 1847, John Caruthers bargained with W. Goodman for two tracts of land; and being insolvent, he procured one Petrie, a relative, to execute his notes for the purchase-money, and to accept a bond for title in his, Petrie's, name, which was soon afterwards assigned by him to the wife of Caruthers. In February, 1850, Caruthers sold the land to Nowlin and Johnson, and caused his wife to assign the title bond to them, and took from them seven notes, under seal, amounting to six thousand dollars, signed by Newlin and Johnson and other persons as sureties, amongst whom was Humphrey Cobb, all payable to Mrs. Caruthers or bearer. These notes were sold by Caruthers to several persons,— one to Humphrey Cobb for $1000, two for $1000 each to the defendant in error, Duke, and four for $750 each to the defendant Jones; Caruthers and his wife making the assignment. Upon one of the notes held by Jones, the money was paid, and suit was brought at law, which was defeated on the ground of failure of consideration, the assignment of the title bond by Mrs. Caruthers being considered void. The bill was filed by Duke and Jones, as assignees of the notes, against the obligors and Caruthers, and the heirs of Petrie and Mrs. Caruthers, who were deceased, and against Goodman, the obligor of the original title bond, and prays for a sale of the land to pay the notes, and in the disjunctive for general relief. Cobb was one of the obligors of the notes as surety, and was also the holder of one of them; and it was proposed in the bill that he should be permitted to unite with the complainants in subjecting the lands to the payment of the notes, upon his paying them his proportion of a sum which they had paid to Goodman on account of the lands; to which his representatives, after his death, assented. After various pleadings, answers, cross bills, and other proceedings, a sale of the lands was decreed, and the sale was made and reported,

and confirmed by the court; and an account was ordered, stating the amount due to Jones, Duke, and Cobb, respectively, upon their claims, and the *pro rata* amount of the proceeds of the sale to which each was entitled; which was taken, and a decree rendered thereupon, ordering the proceeds to be applied accordingly, and that the complainants, Duke and Jones, should recover of the obligors in the bonds given for the purchase-money, the residue due them respectively after receiving their *pro rata* of the proceeds of the sale.

This writ of error was taken, and is prosecuted by the administrators of Humphrey Cobb.

The first error assigned is, that the bill was filed before the complainants, or their assignors, the original vendors, were in a condition to convey the title, and before the defendants were in default on their part; and hence, that it could not be maintained.

Whatever force there might have been in this objection, it is not available to the plaintiffs in error under the facts of the case. It appears that they agreed to unite with the complainants in the effort to enforce their *liens* upon the lands, and in the distribution of the proceeds of the sale to and among the parties entitled. They cannot, therefore, now be heard here to object that the bill was prematurely filed.

The next ground of error is, that after directing a distribution of the proceeds of the sale *pro rata* among the parties entitled, a decree *in personam* for the residue due the complainants, Duke and Jones, was rendered against the obligors to the notes.

This presents the question, whether, upon a bill to enforce a vendor's lien upon land for unpaid purchase-money, the vendor having given a bond for title, and the vendee having merely given his notes for the purchase-money, a court of chancery, in addition to decreeing a sale of the land, has power to decree that the vendee shall pay the residue of the debt remaining due after applying the proceeds of the sale of the land.

It is a well-settled rule, that upon a bill to foreclose a mortgage, a court of chancery has no power to render a decree *in personam* for an unsatisfied balance, after the mortgaged property has been exhausted. *Stark* v. *Mercer*, 3 How. 377. And the reason for the rule is stated to be, that the mortgagee has a concurrent remedy

which he may pursue at law against the person. He proceeds in equity in order to foreclose the equitable interest of the mortgagor, and to subject the mortgaged property to his debt. To that extent only is the mortgagor amenable to a court of equity, his personal obligation being purely legal, and cognizable only in a court of law.

The same principles are applicable to the case of vendor and vendee of real estate, where the former has bound himself to convey, upon the condition that the vendee will pay his notes given for the purchase-money. In virtue of the contract, the vendee has an equitable interest in the property, of which he cannot be divested, except by proper and legal steps. The vendor retains his legal title subject to that equity, and has two distinct remedies, or rather securities,—he may go into equity to subject the property to his debt, and divest the equity of the vendee; or he may sue upon the notes at law. If he proceeds in equity, the powers of that court are exhausted when it has acted upon that part of the transaction which is of an equitable nature. He concludes the vendee of his equity, and subjects *the property* to his debt; and this is the same that is done in the case of a mortgage, and his remedy extends no further in that forum. So if he proceeds at law, and sues upon the notes, he obtains but his judgment at law; and that forum has no power over the equitable title which vested in the vendee. The remedies in the two forums are wholly distinct and exclusive; and for the same reason that a court of law has not jurisdiction in a suit upon the notes to divest the equitable interest of the vendee, and subject the land absolved of that interest to the satisfaction of its judgment, a court of equity has not power to render a personal decree upon the notes for the purchase-money, or any part of it.

There appears, indeed, to be no difference in principle between cases of vendors' liens and cases of mortgages, as to the powers of a court of equity over them. And the decisions of this court clearly regard the jurisdiction, in both classes of cases, as resting upon the same foundation, and as having the same extent. *Tanner* v. *Hicks,* 4 S. & M. 294; *Dollahite* v. *Orne,* 2 Ib. 590; *Mosby et al.* v. *Wall,* 23 Miss. 81.

In *Stark* v. *Mercer,* the same reason was urged in favor of the

power of a court of equity to render a decree *in personam*, for an unsatisfied balance in the case of a mortgage, that is urged in this case,—that the court having obtained jurisdiction for one purpose, should exercise it for all purposes. But it was rejected; and the court acted upon the principle, that no considerations of supposed convenience would justify the exercise of a jurisdiction purely legal, by a court of equity.

It is contended, in behalf of the defendants in error, that the decree is proper, because it was a bill for the specific performance of a contract, and in such cases that a court of chancery has full jurisdiction. But such does not appear to be the true character of the bill. Its scope and object appear to be solely to subject the lands to the payment of the purchase-money. The contract was simply that the vendor would convey the lands, and that the vendee would pay the purchase-money. There were no specific acts to be done by the vendee, in the performance of his contract, which it required the aid of a court of chancery to compel him to perform. In such a case the jurisdiction of equity does not rest upon the ground of specific performance, but upon its power over the trust and equitable interest of the vendee (Story's Eq. Jur. § 1217), and which is in the nature of a mortgage.

Nor is this a case where a court of equity, in the exercise of its proper jurisdiction, and in doing complete justice between the parties, may decree a matter cognizable at law. Such was the case of *Cathcart* v. *Robinson*, 5 Peters, 278, relied on by the defendants in error. There the vendor filed a bill against the vendee for a performance of specific acts, agreed by him to be done in completing the purchase, and by which the purchase-money was to be secured, the agreement containing a clause for stipulated damages of one thousand dollars, in default of faithful performance on either part. It was properly a case for a specific performance, according to the bill. But the vendee claimed that it was the understanding that he had the right to surrender the land and pay the stipulated damages, instead of receiving the land and paying the whole purchase-money; and as the vendor could not claim more than that, and it was a mere legal obligation which could be enforced at law, that the bill could not be maintained. The court held that his entire equity consisted in his claim to surrender the land and pay

the stipulated damages, and without that that he would be compelled to a specific performance; that in order to prevent a decree for specific performance, he must do that which he claimed in lieu of it, and though a matter which might have been cognizable at law, yet the court would compel him to do it, or to submit to a decree for a specific performance.    The act here required to be done was a mere incident to the jurisdiction of the court in the case; and the rule held is simply that the court having jurisdiction of the case, will not permit it to be frustrated by the assertion of a claim of a legal nature, but will require the party claiming the benefit of it to perform the act.

It is manifest that the principle acted upon in that case is not applicable to the one before us.

We therefore think it clear, that generally a court of equity has not jurisdiction to make a decree *in personam* in cases of this sort. .

But it is insisted that, under the peculiar circumstances of this case, it was necessary to go into equity to remove the doubts and difficulties existing as to the title to the property, and the consideration of the notes—the title being embarrassed by the fact that the title bond had been assigned to Mrs. Caruthers, a *feme covert*, whose assignment to Newlin and Johnson was invalid or doubtful, and by the further fact that her title was fraudulent, the property really belonging to her husband;· and the assignment of the notes being invalid by reason of the coverture of Mrs. Caruthers, the obligee, and therefore passing no legal title to the holders.    It is said that these being matters upon which a court of equity alone could give relief, and having thus acquired jurisdiction, that it was proper to settle all matters connected with the transaction.

As to the considerations in relation to the doubts and embarassments upon the title, they were very proper to be presented and settled in the bill filed to subject the property to the vendor's lien. They had a very important connection with the bill filed for that purpose, as it was proper, in subjecting the lands to the payment of the debt, to remove all embarrassments upon the title.    But it is not perceived how these considerations made it necessary to render a personal decree against the vendees.    They were matters with which the vendees were not chargeable on account of any breach of duty, and which should not have been used to their pre-

judice. They were mere equitable considerations connected 'with the complainant's claim, in addition to his general right to enforce his lien in equity, and afforded no further reason for proceeding to settle all matters connected with the transaction, and rendering a decree *in personam*, than the original ground of enforcing the vendor's lien upon which the bill was filed. The same reason, therefore, which prevents a decree *in personam* upon the bill to enforce the lien, would prevent such a decree in virtue of these additional considerations.

As to the invalidity of the legal title of the complainants, by reason of the alleged insufficient transfer of the notes by the *feme covert*, the notes are payable *to bearer*, and the legal title passed by delivery. *Craig* v. *The City of Vicksburg*, 31 Miss. 216. Moreover, if it appeared that the notes were transferred by the joint assignment of the husband and wife, that would be a sufficient assignment to pass the title. *Work* v. *Glaskins*, 33 Miss. 539.

If the notes were liable to the defence of failure of consideration, arising from defective title to the land, that certainly would be no reason for the complainants' resorting to a court of equity to enforce the payment of the purchase-money. It would rather be ground for rescission of the contract, if the vendee thought fit to insist upon it. Certainly he could not be involved in an expensive litigation without any fault on his part, at the instance of the vendor, and in order to enable the vendor to perform his part of the contract, and to reap the benefits of it. The suggestion of the failure of consideration, as showing ground against the complainants' proceeding at law, does not, therefore, tend to strengthen the claim to equitable relief upon which the decree *in personam* is founded, but quite the contrary.

This view of the case renders it unnecessary to consider the errors assigned in relation to the taking of the account without notice. It is proper to remark, however, that the objections on that ground appear to be untenable under the rule held in *Knox* v. *Bank of U. S.* 26 Miss. 656, *Felder* v. *Wall*, Ib. 595, and *Nebbett* v. *Cunningham*, 27 Ib. 292.

The decree *in personam* must be reversed, and in that respect the bill is dismissed.