### IN THE

# SUPREME COURT

### OF

# OREGON.

Argued April 24, reargued July 2, reargued July 17, affirmed October 21, 1919.

## WRIGHT v. WIMBERLY.*

(184 Pac. 740.)

**Equity—Judgment—"Decree" and "Judgment" Distinguished.**

1. The final determination of an action at law by a court in Oregon is called a "judgment," while that of a suit in equity is denominated a "decree."

**Mortgages—Construction of Statutes Regulating Foreclosure.**

2. No rule having existed at common law respecting the foreclosure of mortgages, statutes regulating the procedure in such a case are not in derogation of common law and should not be strictly construed.

**Mortgages—Foreclosure by Granting Equity of Redemption not of Common-law Origin.**

3. Unless a custom of the common law had its origin when the memory of man runneth not to the contrary, or from the beginning of the reign of Richard I, the rule could not be classed as part of the common law, so that foreclosure of mortgages by granting equity of redemption is not of common-law origin, having been instituted probably in the reign of Queen Elizabeth.

**Statutes—Liberal Construction of Remedial Enactments.**

4. While statutes conferring special privileges on individuals should be construed strictly against them, enactments to redress existing grievances and for the protection of rights are remedial and should be liberally interpreted.

**Constitutional Law—Statute Protecting All Members of Class not Class Legislation.**

5. Legislation which protects alike all the members of a class that are or may be affected thereby is not obnoxious to Article I, Section 20, of the Constitution.

*On effect of statutory provisions abolishing deficiency·judgment for mortgage debt, see note in 45 **L. R. A.** (N. S.) 247.    REPORTER.

Mortgages—Foreclosure as Bar to Action for Deficiency.

6. Although Section 426, L. O. L., abolishing deficiency judgments upon foreclosure of real estate purchase price mortgages, does not so modify Section 429, relating to action at law on indebtedness secured by mortgage, as to prevent the holder of purchase-money mortgage note from disregarding the mortgage and bringing action for personal judgment on the note; yet, where such holder does sue to foreclose, then, since the court is inhibited by Section 426 from awarding under Section 425 a conditional recovery or "deficiency judgment" against the mortgagor, its determination of the entire sum due upon the personal obligation, as required by Section 422, is not equivalent to decreeing recovery thereof, except only as the award is limited to the mortgaged realty; and, as the foreclosure sale necessarily exhausts the power given to the court, the effect as *res judicata* of the decree thus denying deficiency judgment is to prohibit a later separate action at law by the mortgagee for such a deficiency.

Appeal and Error—Duty of Supreme Court to Announce the Law.

7. Under Article VII, Section 3, of the Constitution, when some other determination necessarily follows from the conclusion reached, it is the duty of the Supreme Court to announce the law in order to curtail expenses and promote the peace of society.

Evidence—Judicial Notice of Financial Depression.

8. The courts should take judicial notice that in 1897 and for some time thereafter great financial depression prevailed in the Pacific Coast states.

From Douglas: JAMES W. HAMILTON, Judge.

In Banc.

This is an action by A. H. Wright against L. Wimberly and Cora, his wife, to recover money. The facts are that on January 27, 1910, O. C. Jones and his wife in consideration of $4,000 executed to L. Wimberly a deed of a tract of land in Douglas County, Oregon. The purchaser paid $1,000 down and thereupon he and his wife executed to Jones a promissory note for $3,000, maturing on or before ten years with interest at the rate of 6 per cent, payable annually, but if default were made as to any such installments, the principal and interest were to become immediately due and collectible at the option of the holder of the note, and in case suit or action were instituted thereon, the makers promised to pay such additional sum as the

court might adjudge reasonable as attorney's fees. In order to secure the payment of the negotiable instrument, the makers at the time it was given also executed to Jones a mortgage on the real property so purchased. The note was assigned to the plaintiff who, upon default in the payment of interest, elected to treat the entire debt as due and collectible, and thereupon instituted a suit against the defendants herein and others, to foreclose the mortgage. Pursuant to the provisions of Section 426, L. O. L., hereinafter quoted, the lien was foreclosed, but the trial court refused to give a deficiency judgment, whereupon an appeal was taken and such final determination was affirmed: *Wright* v. *Wimberly,* 79 Or. 626 (156 Pac. 257). Obeying the command of the decree, the sheriff of that county on January 28, 1913, regularly sold the real property so mortgaged for $2,250, and after deducting the expenses of such sale, the costs and disbursements of the suit, and the further sum of $300 which was adjudged reasonable as attorney's fees, the remainder of the proceeds, $1,909, was indorsed on the promissory note.

Allowing credit therefor as a voluntary payment, this action was instituted to recover the balance due on the note with interest from January 28, 1913, and the further sum of $150 as additional attorney's fees. The complaint states the facts in substance as hereinbefore detailed and alleges in effect that the plaintiff purchased the note in due course, before maturity, for a valuable consideration and without notice or knowledge that the mortgage was executed to secure the payment of the purchase price of the land; that neither the note nor the mortgage indicated that either was given for that purpose; and that it appeared from the deed records of Douglas County, Oregon, that O. C. Jones

conveyed the real property to the defendant L. Wimberly on the day the note and mortgage were executed. The complaint also narrates the suit to foreclose the mortgage, the decree given therein, the sale of the land pursuant thereto, and the credit of the remainder of the proceeds upon the promissory note, and also avers that no other payments than those mentioned had been made.

The allegation in the initiatory pleading, relating to the plaintiff's purchase of the note and mortgage without notice or knowledge that they had been executed to evidence any part of the purchase price of the mortgaged real property, was stricken out upon motion of defendants' counsel. Their demurrer to the remainder of the complaint on the ground that it did not state facts sufficient to constitute a cause of action was sustained, the action was dismissed and the plaintiff appeals.                              AFFIRMED.

For appellant there was a brief with oral arguments by *Mr. Oliver P. Coshow* and *Mr. Benjamin L. Eddy.*

For respondents there was a brief over the names of *Messrs. Rice & Orcutt* and *Messrs. Neuner & Wimberly,* with oral arguments by *Mr. A. N. Orcutt* and *Mr. Carl Wimberly.*

McBRIDE, C. J.—This cause was argued and submitted April 24, 1918, but owing to the inability of the Justices to agree, was continued for further consideration. The late Justice MOORE, before his death and in fact during his last long illness, prepared an opinion in the case which, in the judgment of the writer, correctly states the law. It is a monument to the faithfulness of the deceased Jurist, to the duties of his office

and the last evidence of that industry which only death could abate. The writer adopts Judge MOORE's opinion as his own and it is here given in full

MOORE, J.—1. Before discussing the questions here involved it should be said that in Oregon, though the same judge usually presides at the trial of actions at law and of suits in equity, these forums are essentially distinct. The final determination of an action at law by a court in this state is called a "judgment," while that of a suit in equity is denominated a "decree." A party who has an equitable defense in a law action is not remediless however, for if a defendant in such action is entitled to relief arising out of facts requiring the interposition of a court of equity and material to his defense, he may upon filing his answer in the action, also as plaintiff file a complaint in equity in the nature of a cross-bill, the institution of which suit shall stay the proceedings at law, and the case shall thereafter continue as a suit in equity, in which the maintenance of the action at law may be perpetually enjoined by final decree, or allowed to proceed in accordance therewith: Section 390, L. O. L.

With these preliminary observations, attention will be called to some provisions of our statute, relating to the foreclosure of mortgages. The Code adopted October 11, 1862, and which went into effect June 1, 1863 (Deady's Gen. Laws of Oregon 1845–64, p. 139), contained clauses which, having been incorporated in Lord's Oregon Laws, read:

"A lien upon real or personal property, other than that of a judgment or decree, whether created by mortgage or otherwise, shall be foreclosed, and the property adjudged to be sold to satisfy the debt secured thereby by a suit. In such suit, in addition to the de-

cree of foreclosure and sale, if it appear that a promissory note or other personal obligation for the payment of the debt has been given by the mortgagor or other lien debtor, or by any other person as principal or otherwise, the court shall also decree a recovery of the amount of such debt against such person or persons, as the case may be, in the case of an ordinary decree for the recovery of money'': Section 422, L. O. L.

''During the pendency of an action at law for the recovery of a debt secured by any lien mentioned in Section 422, a suit cannot be maintained for the foreclosure of such lien, nor thereafter, unless judgment be given in such action that the plaintiff recover such debt or some part thereof, and an execution thereon against the property of the defendant in the judgment is returned unsatisfied in whole or in part'': Section 429, L. O. L.

These and other sections of the Code, relating to the foreclosure of mortgages, which later provisions are not deemed to be involved herein, were in force February 24, 1903, when there was filed in the office of the Secretary of State a statute, which, omitting the enacting clause, is as follows:

''An act to abolish deficiency judgments upon the foreclosure of mortgages to secure the unpaid balance of purchase price of real property.

''Section 1. When judgment or decree is given for the foreclosure of any mortgage, hereafter executed, to secure payment of the balance of the purchase price of real property, such judgment or decree shall provide for the sale of the real property, covered by such mortgage, for the satisfaction of the judgment or decree given thereon, and the mortgagee shall not be entitled to a deficiency judgment on account of such mortgage or note or obligation secured by the same'': Section 426, L. O. L.

Obeying the restriction contained in the clause last quoted, the trial court, though determining the amount

of the debt, evidenced by the promissory note as a charge against the land if it would sell for that much, refused to grant a deficiency judgment in the suit to foreclose the mortgage, if the proceeds of the sale were insufficient for that purpose: *Wright* v. *Wimberly* 79 Or. 626 (156 Pac. 257). For the same reason the demurrer to the complaint in this action was sustained. The question to be considered is what effect the enactment of Section 426, L. O. L., has upon the prior provisions of the statute hereinbefore set forth.

Mr. Wiltsie in his work on Mortgage Foreclosure (3 ed.), Section 11, says:

"In most states a mortgagee, after default, has three remedies, any one or two or all of which he may pursue concurrently. These remedies are, (1) an action at law to recover the debt, being usually an action on the bond or note, (2) an action in ejectment to obtain possession, and (3) the action of foreclosure; but when he pursues these remedies concurrently, each must be governed by the rules of law applicable to the forum in which it is brought. In some states, however, the action of ejectment can no longer be maintained by the mortgagee for the recovery of the mortgaged premises."

Another author discussing this subject, remarks:

"Furthermore, the mortgagee may, in jurisdictions wherein the rules of the common law prevail, bring an action of ejectment, in addition to his action on the debt secured, or a bill for foreclosure and sale": 19 R. C. L. 512.

To the same effect see, also, Coote, Mort. 518.

It is probable that Section 429, L. O. L., was enacted to prevent the maintenance concurrently of a suit *in rem* to foreclose the mortgage, and of an action *in personam* on the note or other obligation thereby secured.

An exception to the general rule, that when jurisdiction of a cause has been secured by a court of equity for any purpose, power to hear and determine the entire matter will be retained until a final decree is rendered, was recognized by some courts of chancery which held that in suits to foreclose mortgages no personal recovery against a mortgagor could be rendered, even if the property hypothecated was insufficient to pay the debt secured, since a judgment for such deficiency could only be given in an action at law: 19 R. C. L. 667. Such conclusion originally made it necessary, in case the proceeds of a sale of the mortgaged property were insufficient to discharge the entire debt thus secured when that sum was sought to be recovered, to maintain a suit in equity to foreclose the mortgage, and also an action at law to obtain the remainder, thereby incurring the costs and disbursements, incident to two trials: 4 Kent's Com., §§ 182–184; Hatch v. White, 2 Gall. 152 (Fed. Cas. No. 6209). In order to avoid such extra expenses statutes have been passed authorizing courts of equity in decreeing the foreclosure of a mortgage, also to award a conditional recovery of the deficiency, if any should be found to exist, after a sale of the mortgaged premises and an application of the proceeds to the debt secured, and without an enactment of that kind it is generally conceded in some states that such a court does not have inherent power to grant relief of that character: Jones, Mort. (7 ed.), § 1711; 9 Ency. Pl. & Pr. 452. In compliance with the supposed requirement that a statute was essential to empower a court of equity in decreeing the foreclosure of a lien, also to award a conditional recovery against the maker of the note, Section 422, L. O. L., was evidently enacted so as to prevent the maintenance of more than one proceeding for the

collection of the debt when resort was had to a court of equity. Thereafter Section 426, L. O. L., was passed to prohibit a court of equity, when decreeing the foreclosure of a lien, from awarding a conditional recovery against the maker of a note or obligation secured by a mortgage executed to evidence a part or the whole of the purchase price of mortgaged real property, thereby limiting the recovery exclusively to such land.

Since the title of the act hereinbefore quoted relates to "the foreclosure of mortgages," it was held that the enactment did not impliedly repeal, amend or modify Section 429, L. O. L., so as to prevent the maintenance of an action at law to recover the amount of a promissory note given to evidence a part of the purchase price of land, though the note was secured by a mortgage of the premises so bought: *Page* v. *Ford*, 65 Or. 450 (131 Pac. 1013, Ann. Cas. 1915A, 1048, 45 L. R. A. (N. S.) 247). It was also decreed that the enactment of Section 426, L. O. L., impliedly amended Section 422, Id., so as to prevent a court of equity upon the foreclosure of a real estate mortgage from awarding a conditional recovery against the maker of a promissory note which was secured by a mortgage given to evidence a part of the purchase price of the mortgaged land: *Wright* v. *Wimberly*, 79 Or. 626 (156 Pac. 257).

If Section 426, L. O. L., is to be strictly construed, it might follow that an enactment, which was unquestionably designed to benefit a person who had given a mortgage to secure the purchase price of real property, by making an enforced sale thereof pursuant to a decree, the limit of the recovery would impose upon him the costs and disbursements of a suit in equity to foreclose the lien, and also of an action at law to recover the deficiency, if any, when prior to the passage

of the statute he could have been subjected to the expenses of only one trial, while a liberal interpretation of the section will necessarily restrict the costs and disbursements to but one proceeding.

2. No rule existed at common law respecting the foreclosure of mortgages, and this being so, our statutes regulating the procedure in a case of that kind are not in derogation thereof and for that reason should not be strictly construed. In speaking of the rules thus anciently adopted and enforced in England, a noted author observes:

"For the authority of these maxims rests entirely upon the general reception and usage; and the only method of proving that this or that maxim is a rule of the common law, is by showing that it hath been always the custom to observe it": 1 Black. Com. *68.

A mortgage at common law was an estate upon a condition subsequent: 2 Black. Com. 154. As soon as the estate was created the mortgagee might immediately enter upon the lands, but he was liable to be dispossessed upon the performance of the condition by payment of the mortgage money at the day limited. It was usual, however, for the parties to agree that until the maturity of the debt the mortgagor should retain possession of the real property, but in case of his failure promptly to discharge the obligation, the mortgagee was entitled to take possession of the premises without any possibility at law of being afterward evicted by the mortgagor, to whom the land was forever thereafter dead: Id., *158. To the same effect see, also, Digby's History of the Law of Real Property (5 ed.), 285.

A text-writer, in referring to the kind of mortgage thus in general use, remarks:

"The *mortuum vadium* was always made upon definite and exact terms of forfeiture; and if the conditions were not punctually kept, the title passes absolutely and forever from the debtor to the creditor. This form of landed security was extremely severe and often grossly unjust to the debtor. The spirit of the common law was inexorable, and allowed no redress to the unfortunate debtor": 1 Wiltsie, Mort. Foreclosure (3 ed.), § 2.

In order to mitigate the severity of such a harsh rule, courts of equity interposed and by comparing the value of the tenements with the sum loaned, if it were determined that the land was of the greater worth, a reasonable time was allowed the mortgagor to recall the estate, which right thus granted was denominated "The equity of redemption": 2 Black. Com. *159; Burton, Real Property, 481; 1 Greenleaf's Cruise on Real Property, 547.

In a note at page 3 of Burton's Real Property, in speaking of judges, the author observes:

"The true idea of the common law seems to be that of an organized system having its principles of growth within itself, and of which these officers are themselves a part. No new law can ever proceed from them; but the old is by their means in a continual process of further development."

On the following page this text-writer asserts:

"The rules and usage of causes of equity form a system which may be regarded as a kind of secondary common law, applicable generally to matters in which the courts of law have no jurisdiction, but sometimes interfering with those courts, and correcting the law which they observe": See, also, Wiltsie Mort. Foreclosure (3 ed.), § 216.

In speaking of the engrafting of equitable principles upon the severe rules of the common law regarding mortgages, a text-writer remarks:

"It is believed that the first encroachments by the courts of chancery were in the reign of Queen Elizabeth; but their powers were not fully exercised until the time of James I": Wiltsie, Mort. Foreclosure, § 2. To the same effect see Coote, Mort. *20; 4 Kent's Com. (11 ed.), *158.

3. Unless a custom had its origin "when the memory of man runneth not to the contrary," or from the beginning of the reign of Richard I, the rule was not sufficiently ancient to be classed as a part of the common law: 2 Black. Com. *31. The reign of Richard I began 369 years prior to that of Queen Elizabeth, so that the foreclosure of mortgages by granting an equity of redemption is not of common-law origin.

The principles of the common law which can be violated by the enactment of a statute must be a system of procedure which, from time immemorial, has been recognized in and enforced by courts of law, and since such maxims contained no provision relating to the foreclosure of a mortgage, our statutes on that subject are not violative of the ancient rules.

4, 5. While it is conformable to practice that statutes conferring special privileges on individuals should be construed strictly against them, it is also true that enactments for the redress of existing grievances and for the protection of rights are known as "remedial" and as such should be liberally interpreted: 36 Cyc. 1174. Legislation which protects alike all the members of a class that are or may be affected thereby is not obnoxious to Article I, Section 20, of the Constitution of Oregon: *In re Oberg*, 21 Or. 406 (28 Pac. 130, 14 L. R. A. 577). The remedial character of Section 426, L. O. L., which grants to a person the privilege of securing a tract of land for himself and family, by giving a mortgage upon the premises for a part of the

purchase price, limiting a recovery in case of a fore-
closure to a sale of the land so purchased, and permit-
ting the mortgagee to retain the sum of money re-
ceived on account thereof, renders the statute subject
to a liberal construction and makes it of greater im-
portance to the state in securing home-builders, than
the recognition of a rule which asserts that enactments
conferring special privileges upon individuals should
be strictly interpreted. Upon principle and authority
Section 426, L. O. L., should be liberally construed in
favor of the particular class of individuals there
specified.

6. So interpreting the clauses of the statute under
consideration they will be examined. It will be re-
membered that Section 422, L. O. L., substantially pro-
vides that a lien created by mortgage shall be fore-
closed by a suit and the property adjudged to be sold
to satisfy the debt secured thereby, and if it appears
that a promissory note for the payment of the debt
has been given by the mortgagor, the court shall de-
cree a recovery of such debt against him, as in the
case of an ordinary decree for the recovery of money.
In foreclosing a mortgage in this state, the general
practice has been, in a suit of this kind, to allege in
the complaint that one or more of the defendants exe-
cuted a promissory note to a person named, setting
forth a copy of the instrument; that in order to secure
the payment of such obligation the defendants also
executed to the payee of the note a mortgage of real
property describing the premises; that the mortgage
provided that if the note were paid according to stipu-
lation, the mortgage should be void, but if default in
this respect were made the payee of the note or his
assignee was authorized to foreclose the lien; that the
plaintiff was the holder of the note, no payments on

account of which had been made except as stated, thus leaving due a certain amount; and that the conditions of the mortgage had thus been broken. The prayer of the bill was for a determination of the amount of the debt, and a foreclosure of the lien of the mortgage, that if upon a sale of the premises, the proceeds thereof were insufficient to satisfy the expenses of the sale, the costs and disbursements of the suit and the amount of such debt, that the plaintiff might have execution for the remainder. The decree invariably followed the prayer of the complaint, if its averments were substantiated.

"When a decree of foreclosure and sale is given, an execution may issue thereon against the property adjudged to be sold": L. O. L., § 425, subd. 1.

"When the decree is also against the defendants or any one of them in person, and the proceeds of the sale of the property upon which the lien is foreclosed is not sufficient to satisfy the decree as to the sum remaining unsatisfied, the decree may be enforced by execution as in ordinary cases": Id., subd. 2.

Though the final process, issued pursuant to a decree of foreclosure, is thus denominated an "execution" against particular property, the practice in Oregon has been for the clerk in the first instance, to send forth, attested by his official seal and signature, what is known as "an order of sale," containing the title of the court and cause, addressed to the sheriff or other officer, commanding him in the name of the State of Oregon to enforce such mandate, which consists of a copy of the decree and an order to sell the property particularly described therein "as upon execution," and to apply the proceeds arising from the sale in the manner there specified. Where, after personal service of process, a decree was rendered against a de-

fendant, foreclosing a mortgage given to secure a promissory note, and the proceeds of the sale of the mortgaged property were insufficient to satisfy the debt, the procedure adopted in this state for the enforced collection of the remainder, after the return of the order of sale, has been to cause to be issued, without further leave of court, an execution as in ordinary cases. It will thus be seen that though our statute does not in express terms provide for giving a ''deficiency judgment,'' such authority is impliedly conferred by Section 425, L. O. L., which prescribes the method to be pursued to collect the remainder after a sale of land upon the foreclosure of a mortgage securing the payment of a promissory note, and the general practice based upon that clause of the statute has been to incorporate in the decree an order which is equivalent to the rendering of such a judgment. Giving to Section 426, L. O. L., the liberal interpretation to which it is entitled as a remedial enactment, the language there employed is not only aimed at all other clauses of the statute relating to the foreclosure of liens upon property, but is also directed to·the procedure heretofore prevailing in Oregon, which is authorized by the sections of the statutes referred to, that are in any manner inconsistent with the rule now prescribed for the foreclosure of a purchase-money mortgage, thereby impliedly amending the previous parts of the law contrary thereto. If that section of the statute is to be strictly construed, such interpretation would be ·equivalent to holding that the enactment made no alteration whatever in the prior statutes regulating the foreclosure of liens, or changed in any manner the procedure relating thereto, except to necessitate a suit to foreclose the mortgage, and in case of a deficiency upon a sale of the encumbered real prop-

erty, the maintenance of an action at law to recover such remainder, thereby entailing the costs and disbursements of two proceedings, when the expenses of only one was essential prior to the enactment of Section 426, L. O. L.

The decree demanded by Section 422, L. O. L., as modified by the subsequent enactment of Section 426, Id., requires a court of equity in foreclosing a purchase-money mortgage, given to secure the payment of a promissory note, to determine the entire sum due upon the personal obligation. Since, however, the latter section of the statute inhibits that court from granting "a deficiency judgment on account of such mortgage or note or obligation," a judicial ascertainment of the amount so due is not equivalent to the giving of a decree for the recovery thereof, except only as the award is limited to the real property described in the mortgage. A sale of the encumbered land under the decree foreclosing a purchase-money mortgage, necessarily exhausts the entire measure of power bestowed by the legislative assembly upon the court and there is therefore no remainder due, after the sale of the land, upon which an execution can be issued.

7. The amendment of Section 3, Article VII, of the Constitution of Oregon was adopted to facilitate the ultimate disposal of causes upon appeal, thus preventing the costs and disbursements which may be incurred by another trial. When, therefore, as in this instance, an execution cannot be legally issued upon a decree foreclosing a purchase money mortgage, or any other determination necessarily follows from the conclusion reached, it is the duty of the court so to announce the law in order to curtail expenses and to promote the peace of society.

8. It is a fact of which courts in Oregon should take judicial notice, that in the year 1897 and for some time thereafter, great financial depression prevailed in the Pacific Coast states. Persons who had purchased real property in that territory during the earlier flush times by paying a part of the purchase price and giving a mortgage to secure the remainder, found it impossible, if they had not disposed of the premises prior to the monetary stagnation, to discharge their legal obligations, whereupon the foreclosure of liens became inevitable. As there was no money then easily to be secured, the creditor, upon a sale of the premises pursuant to the decree, usually became the purchaser for almost a nominal sum and far below the mortgage debt, thereby obtaining a recovery over upon the personal obligation of the mortgagor for the remainder, thus taking all the property the debtor then had and jeopardizing his prospects of ever obtaining any more land. In order to prevent a repetition of such conduct on the part of a creditor, Section 426, L. O. L., was enacted and made applicable to the foreclosure of mortgages thereafter executed. That such a statute was intended to be remedial cannot well be disputed. The enactment is in the nature of an appraisement law, fixing an upset price upon the sale of real property under a decree of foreclosure equal to the amount of the debt, costs, disbursements, etc., thereby permitting the mortgagee to retain the sum of money which he had received on account of the sale, and allowing him to be restored to his original estate in the premises.

It will be admitted that in some instances the mortgagee might practically be at the mercy of the mortgagor. Thus, if buildings upon the premises were burned, the land, particularly a city or village lot,

94 Or. —2

might be inadequate security. Partial indemnity, however, might be obtained in such a case by stipulation, whereby the mortgagee could keep the structures insured for his benefit at the expense of the mortgagor, the premiums to be added to the lien and if the sum given for the insurance were not promptly paid a foreclosure of the lien might be decreed.

In case of the purchase in this state of timber lands, the chief value of which depends upon the number and quality of sawlogs that can be cut and removed from the premises, the purchaser of such real property, by giving a mortgage thereof to secure a part of the consideration, might by his carelessness suffer a fire to destroy the growth upon the land, thereby rendering the security practically valueless, and for indemnity in such a case present insurance is not obtainable. The consequences adverted to might well appeal to the lawmaking power, but they cannot be considered by a court except possibly to determine the legislative intent as a means of construing a statute. Similar questions are commented upon in the case of *Dennis* v. *Moses,* 18 Wash. 537 (52 Pac. 333, 40 L. R. A. 302), where it was held that a statute of Washington providing:

"That in all proceedings for the foreclosure of mortgages hereafter executed, or on judgments rendered upon the debt thereby secured, the mortgagee or assignee shall be limited to the property included in the mortgage,"

—was violative of the Constitution of that state, on the ground that it was an undue restraint upon the liberty of the citizen to contract with respect to his property rights. In that case the mortgage contained stipulation on the part of the mortgagor waiving all benefits under the provisions of the enactment. The lower court found that a writing to that effect had

been made, but that the attempted agreement was void; that there should be an appraisement of the land as demanded by the statute; and that the premises could not be sold for less than 80 per cent of such estimated value. The Supreme Court determined, however, that as the privilege undertaken to be bestowed by the statute upon a mortgagor was personal, in which the public had no interest, he could waive all such benefits. The general conclusion thus reached, however, is very much impaired by the dissenting opinion of two justices of the court.

The decision of the majority of the court in that case is not in harmony with the early rule adopted to prevent parties from avoiding beneficent redemption on the foreclosure of a mortgage, in speaking of which an author observes:

"No sooner, however, was this equitable principle established, than the cupidity of creditors induced them to attempt its evasion, and it was a bold but necessary decision of equity that the debtor could not, even by the most solemn engagements entered into at the time of the loan, preclude himself from his right to redeem; for in every other instance probably, the rule of law, *modus et conventio vincunt legem,* is allowed to prevail. In truth it required all the firmness and wisdom of the eminent judges who successively presided in the courts of equity, to prevent this equitable jurisdiction being nullified by the artifice of the partes": Coote, Morte. *21.

In *Bradley Engineering etc. Co.* v. *Muzzy,* 54 Wash. 227 (103 Pac. 37, 18 Ann. Cas. 1072), it was held that a decree foreclosing a chattel mortgage without giving a deficiency judgment, as required by the Washington statute, was *res judicata* as to the plaintiffs' right of recovery, and it could not afterwards bring a separate action for the deficiency, but its only remedy was to

appeal from the decree of foreclosure to correct the omission therein. In Oregon, though the statute does not expressly provide for the giving of a deficiency judgment upon the foreclosure of a mortgage, the practice in courts of equity in this state, authorized by Section 425, L. O. L., has been so universal to that effect as to acquire the force of a direct legislative enactment respecting procedure, and this being so the decision rendered in the case last cited is controlling herein, thereby making the decree given in *Wright* v. *Wimberly,* 79 Or. 626 (156 Pac. 257), prohibitive of the maintenance of this action.

It follows from the conclusions reached in the foregoing opinion that the decree of the Circuit Court should be affirmed. ·                    AFFIRMED

BEAN, J., concurs.

BENNETT, J., Specially Concurring.—The facts in this case have already been fully stated in the opinion of Chief Justice McBRIDE and in the opinions of Justices BURNETT and HARRIS.

I concur in the conclusion and in the general reasoning of former Justice MOORE, as adopted in the opinion of the Chief Justice.

It seems to me that Section 426, L. O. L., clearly intended to make the foreclosure of the purchase-money mortgage satisfy the debt, without regard to the amount for which the property was sold, and that it was intended to prohibit a judgment for any deficiency, either in the foreclosure proceeding or any other proceeding.

I also think the title to the act, by which Section 426 was originally enacted, which was

"To abolish deficiency judgments upon the foreclosure of mortgages to secure the unpaid balance on the purchase price of real property,"

—was sufficiently broad to come within the provisions of Section 30, Article IV, of the Oregon Constitution.

I think the entire satisfaction of the debt and the prohibition of a deficiency judgment, either in the foreclosure proceeding or in an action at law, was ''properly connected'' within the meaning of that constitutional provision, with the subject indicated in the title.

It is urged that there was no deficiency judgment, under the provisions of our Code, prior to the adoption of Section 426, *supra,* and that, therefore, the act of the legislature abolishing deficiency judgments, found nothing to abolish, and was nugatory and meaningless. I think such a construction of a solemn act of the legislature should not be accepted, unless the argument therefor is very cogent and compelling.

It is reasoned that, according to the ancient practice, a judgment for the deficiency was a separate judgment, entered after the return of the execution upon the mortgage foreclosure, and that our judgment under Section 422, L. O. L., prior to the adoption of Section 426, was a general judgment against the defendant for the whole amount of the debt, and was not therefore a ''deficiency judgment.''

It is argued that the phrase ''deficiency judgment'' should be defined as a special judgment for a fixed amount, entered after the return on the execution sale, after fixing the exact amount of the deficiency. It seems to me we should not place too much importance upon a mere arbitrary definition of the term. The practice, as to personal judgments for the deficiency on a mortgage foreclosure, has not been uniform in the different states for a great many years. In some states the old practice was preserved, and the personal judgments were not entered until after the mortgaged property had been sold and the proceeds applied

upon the debt. In others, a personal judgment was entered for the whole sum in the first instance, but execution against the defendant's property generally, could not be issued until it was specially ordered by the court; and this special order would only be made upon a showing, after the sale of the property covered by the mortgage. In still others, as in our own state, a personal judgment for the whole sum was entered at the time of the adoption of the foreclosure decree; but execution was suspended until the mortgaged property was sold, and then the amount received was applied upon the debt and execution issued as a matter of course for the balance remaining unpaid: 3 Jones on Mortgages (7 ed.), § 1709.

It seems to me that all of these are deficiency judgments, one as much as the other, since they all authorize a general execution against the defendants, for the deficiency after the mortgaged property had been sold and the money applied, and for that alone.

The words "deficiency judgment" have not, as far as I have been able to ascertain, ever attained the dignity of a dictionary definition. Neither do they seem to have been very often defined by the courts.

In *Goldsmith* v. *Brown,* 35 Barb. (N. Y.) 484, 492, there was a covenant to pay the deficiency after a foreclosure and sale, the court saying:

"This word 'deficiency,' as used in this contract, has a technical meaning, and signifies that part of the debt or sum of money which the mortgage was made to secure, and which is not realized and collected from the subject mortgaged."

In *Bailey* v. *Block,* 104 Tex. 101, 103 (134 S. W. 323, 325), the Supreme Court of Texas, after tracing all the different changes in the practice in regard to judgments for a deficiency, proceeds:

"To all of these practices one prominent require-
ment is common, and that is that the foreclosure sale is
to be made, the proceeds applied and the deficiency
thus mathematically ascertained before any proceed-
ing against the property of the debtor other than that
mortgaged, is allowed."

It seems to me that a deficiency judgment may fairly
be defined as any judgment for the deficiency after the
sale of the mortgaged property, and which can be en-
forced generally against the property of the defend-
ant, after the receipts of the mortgage foreclosure
have been applied.

And it seems to me that any such judgment would
be equally a deficiency judgment, whether it was en-
tered before or after the return of execution, and
whether it was in form a general judgment for the
whole sum, to be reduced by the application of the pro-
ceeds from the sale under the mortgage, or a specific
judgment for the particular amount left unpaid, en-
tered after the foreclosure sale.

It is true that under the law, as it stood prior to the
adoption of Section 426, L. O. L., Section 422 of the
Code provided that in addition to a decree of fore-
closure the court should, in case of a promissory note,
etc., "decree the recovery of the amount of such debt
against such person or persons, as the case may be, as
in the case of an ordinary decree for the recovery of
money." That is still the law as to ordinary foreclos-
ures other than purchase price mortgages.

But that section must be construed together with
Section 425, which provides that an execution issue in
the first instance, for the sale of the property covered
by the mortgage, and that when the property covered
by the mortgage is not sufficient to pay the entire debt,

"the decree may be enforced by execution as in ordinary cases."

This latter section is, of course, read into all personal judgments on the foreclosure of mortgages, and when the two sections are construed together, we have a judgment in form against the defendants for the whole sum, and also a judgment or decree for the sale of the mortgaged property; but the judgment against the defendants personally can only be enforced after the mortgaged property has been sold and then only for the amount of the deficiency.

To my mind, this is just as much a deficiency judgment as if the word "deficiency" was written into the decree, and that decree was entered after the sale of the property under the mortgage.

We think this is what has always been understood in this state as a deficiency judgment, and that it is the deficiency judgment prohibited by Section 426, L. O. L.

This view seems to be recognized by this court in *Stewart* v. *Templeton*, 55 Or. 364 (104 Pac. 978, 106 Pac. 640), in which it is said:

"It is insisted, however, that, whatever view may be taken, a deficiency judgment cannot be had against the defendant; but, since it is not disclosed that the notes were given for the purchase price of the property mortgaged, we fail to see upon what grounds this contention can be upheld."

In *Myer* v. *Beal,* 5 Or. 130, the court says.

"The correct interpretation of this statute is, that when there is a covenant for the payment of a certain sum in the mortgage the remedy shall be against the land, and at the same time a personal judgment may be obtained *to collect any amount which may remain unpaid after the proceeds of the sale of the mortgaged*

*premises have been applied to the extinguishment of the judgment."*

It is true that under the doctrine announced in *Page v. Ford,* 65 Or. 450 (131 Pac. 1013, Ann. Cas. 1915A, 1048, 45 L. R. A. (N. S.) 247), the holder of a purchase price note may still proceed at law upon the note and disregard the mortgage; but in doing so he waives his mortgage security, and I do not think that a court of equity would or ought to permit him to evade the statute by taking a personal judgment and then afterwards proceed in a court of equity to foreclose his mortgage.

I think it is a mistake to assume that he would receive the same advantages by proceeding at law on the note as he would by a foreclosure of the mortgage. It is true that he could have a general execution on his judgment against all of the property of the defendant, which might be levied upon the mortgaged property, the same as the remainder of defendant's property; but we may assume that the very purpose of taking a mortgage is to obviate some near or remote danger of the insolvency of the defendant. If it was certain that the debtor was solvent and would remain solvent no one would think of taking a mortgage. If a party proceeds on the note generally he may, when he gets his judgment and execution, find the property attached by other creditors; or a prior judgment of other creditors may have become a lien thereon; or the property may have been transferred or mortgaged by the debtor, or the debtor may claim it as a homestead exemption.

In nine cases out of ten, and probably in ninety-nine cases out of a hundred, the creditor would rather proceed on the mortgage, even if it extinguished his debt to do so, than to waive his mortgage and commence an

action at law upon the promissory note. It was no doubt the insolvent, or nearly insolvent, debtor the legislature was particularly trying to protect, and not the one who had plenty of means outside of the mortgaged property. It might be of but little advantage to the creditor to take a personal judgment over and above his mortgage against an insolvent or nearly insolvent debtor; and yet such a judgment might be a millstone hanging around the neck of such a debtor, discouraging thrift and industry, and leaving no room or hope for future prosperity.

It may be true, that if the mind of the legislature had been directed toward possible actions at law against a purchase price debtor upon the promissory note, that it would have prohibited such action also. The fact that it did not do so and did not complete a perfect scheme for the protection of the debtor under such circumstances, ought not to take away such relief and protection as has been given by the act.

Under the doctrine of *Page* v. *Ford,* 65 Or. 450 (131 Pac. 1013, Ann. Cas. 1915A, 1048, 45 L. R. A. (N. S.) 247), the creditor still has his option to proceed on the mortgage to foreclose, or to proceed on the promissory note at law; but the legislature had a perfect right to say that he could not do both.

As to future contracts and in pursuance of what it considers a correct public policy the legislature has a right to prohibit any contracts which may be injurious to the general public good, or it may stop with rendering such contracts unenforceable. This has been too often held to be any longer questioned. The usury law prevents the contract of the parties for a greater than a given rate of interest. Again it is generally held that a party cannot make a contract in advance to waive his right of redemption or his privilege of ex-

emption. Hundreds of other illustrations could be cited but these are enough.

I think the statute should be literally construed in the interest of the purpose intended by the legislature. It is true that arguments can be adduced *pro* and *con,* as to whether or not such a law would be in the interest of a good public policy; but the very fact that there are such arguments both ways, and considerations to be weighed on each side, makes the question preeminently one for the legislature. And it having declared what it believes to be public policy, in regard to the matter, we must accept that as good public policy and liberally construe the law for the purpose of carrying out its intention

Johns, J., concurs.

HARRIS, J., Concurring.—L. Wimberly and Cora Wimberly purchased a tract of land from O. C. Jones; they paid a part of the purchase price and gave to Jones their promissory note for the balance and they secured the note by executing a mortgage on the land so purchased by them. The note was dated January 28, 1910, and was for the sum of $3,000 payable on or before ten years after date with interest at 6 per cent per annum, payable annually. Neither the note nor the mortgage made reference to the fact that either paper represented a part of the purchase price of the land. Jones sold the note and mortgage to G. H. Carter who in turn transferred the instruments to the plaintiff A. H. Wright. The makers of the note failed to pay the interest which became due on January 28, 1914, and on that account A. H. Wright commenced a suit in foreclosure on March 1, 1914, making L. Wimberly, Cora Wimberly and other parties defendants.

That suit in foreclosure terminated on November 7, 1914, in a decree which in part, is as follows:

"It is ordered, considered, adjudged and decreed that the plaintiff have and recover off and from the defendants L. Wimberly, Cora Wimberly, O. C. Jones, G. H. Carter and each of them, the full sum of $3,319.50 with interest from this 7th day of November, 1914, at the rate of six per cent per annum, and the further sum of $300.00 attorney's fees, and plaintiff's costs and disbursements herein taxed at thirty-one ($31.00) dollars; but that no deficiency judgment be entered against defendants L. Wimberly or Cora Wimberly."

On December 1, 1914, a writ of execution was issued on the decree commanding the sheriff to sell the mortgaged real property to satisfy the amount specified in the decree. The property was sold by the sheriff in obedience to the writ and the sum of $2,500 was realized at the sale. The costs and disbursements of the suit and the attorney's fees were paid out of the proceeds of the sale and the remainder was applied on the amount due on the decree. Afterwards on June 23, 1916, A. H. Wright began this action against L. Wimberly and Cora Wimberly and demanded judgment against them for the sum of $3,000, with interest from January 28, 1913, less the sum of $1,909, which had been applied on the debt out of the proceeds derived from the sale of the mortgaged premises. The facts heretofore detailed as well as other facts were narrated in the complaint.

I concur in the conclusion that the judgment appealed from should be affirmed; but my conclusion is based upon reasons which are radically different from those given in the opinion approved by a majority of the court. We should remind ourselves at

the very outset of the discussion that Section 426, L. O. L., must be viewed in the light of the decision which was rendered in *Page* v. *Ford,* 65 Or. 450 (131 Pac. 1013, Ann. Cas. 1915A, 1048, 45 L. R. A. (N. S.) 247); for it was there held that in despite of Section 426, L. O. L., the holder of a purchase note and mortgage can, if he wishes, ignore the mortgage commence an action at law on the note, obtain a judgment against the maker for the amount due on the note and then by execution levy upon and sell any of the available property of the judgment debtor. In other words, under the ruling made in *Page* v. *Ford,* an action of law on the purchase money note can be prosecuted to a final judgment and full and complete payment of the judgment can be enforced precisely as any other money judgment can be enforced; for under the doctrine of that precedent Section 426, L. O. L., does not place any limitation whatever upon the judgment creditor, but upon the contrary he can compel full payment of the debt by levying upon both the mortgaged property and any other property which the judgment debtor may own exactly as in the case of an ordinary judgment. The ruling in *Page* v. *Ford* permits full payment by compulsory process if the holder of the purchase money note ignores the mortgage and sues on the note. The defendants argue that if the holder of the note and mortgage declines to ignore the mortgage and if he prosecutes a foreclosure suit, he is in that event limited to the mortgaged property and cannot compel the payment of any deficiency, remaining after the sale of the mortgaged property, either in the foreclosure suit or in any other proceeding.

Section 426, L. O. L., was enacted in 1903. The statute is entitled:

## "AN ACT

"To abolish deficiency judgments upon the foreclosure of mortgages to secure the unpaid balance on the purchase price of real property": Laws 1903, p. 252.

This statute will first be considered in the light of the words found in it and of the language employed in certain sections of the Code which were in force when the act of 1903 was adopted. The question of the intention of the legislature will be discussed later.

Every section of the Code, except Section 426, to which we shall direct attention was adopted as a part of the Civil Code in 1862; and it will be seen from an examination of the Code that at no time since 1862 has there been a statute permitting a deficiency judgment. Section 422, L. O. L., reads as follows:

"A lien upon real or personal property, other than that of a judgment or decree, whether created by mortgage or otherwise, shall be foreclosed, and the property adjudged to be sold to satisfy the debt secured thereby by a suit. In such suit, in addition to the decree of foreclosure and sale, if it appear that a promissory note or other personal obligation for the payment of the debt has been given by the mortgagor or other lien debtor, or by any other person as principal or otherwise, the court shall also decree a recovery of the amount of such debt against such person or persons, as the case may be, as in the case of an ordinary decree for the recovery of money."

By the express terms of Section 422, L. O. L., a suit on a note and mortgage results in a decree: (1) Foreclosing the lien of the mortgage and directing a sale of the mortgaged property "to satisfy the debt secured thereby"; and (2) adjudging "a recovery of *the amount of such debt* against" the debtor, whether such debtor be the mortgagor or any other person. In brief, the statute plainly directs the court to decree

a foreclosure of the lien and also commands that "the court shall" enter a personal decree against the debtor for the amount of the debt. The decree against the debtor is not for a part of the debt, but it must be for the whole amount of the indebtedness, and it must be "as in the case of an ordinary decree for the recovery of money." We now turn to Sections 196 and 413, L. O. L., for the purpose of acquainting ourselves with "an ordinary decree for the recovery of money." Section 196, L. O. L., directs that all judgments shall be entered by the clerk in the journal "and shall specify clearly the amount to be recovered." Section 413, L. O. L., makes Section 196, L. O. L., applicable to suits in equity. By force of the plain terms of Section 196, L. O. L., an ordinary decree for the recovery of money would specify the amount to be recovered; and since under the provisions of Section 422, L. O. L., the amount to be recovered is the whole amount of the debt, it necessarily and inevitably follows that the amount to be specified in the decree, is the full amount due on the note. This personal decree is a full and complete decree for the amount of the debt. The note is merged in the personal decree and the latter becomes a bar to another suit or action: 23 Cyc. 1110.

We turn to Section 425, L. O. L., and there read:

"When a decree of foreclosure and sale is given, an execution may issue thereon against the property adjudged to be sold"; and "when the decree is also against the defendants or any one of them in person, and the proceeds of the sale of the property upon which the lien is foreclosed is not sufficient to satisfy the decree as to the sum remaining unsatisfied, *the decree may be enforced by execution as in ordinary cases.*"

It will be observed that in all cases of foreclosure an execution is issued against the property adjudged to

be sold, and, if the proceeds of the sale are not sufficient to pay *"the decree"* which has already been entered against the person then that same decree may be enforced "by execution as in ordinary cases." We next inquire how decrees in ordinary cases are enforced by execution.

By the terms of Section 415, L. O. L., the provisions of Sections 213 to 220, L. O. L., inclusive, and Sections 227 to 258, L. O. L., inclusive, "apply to the enforcement of .decree so far as the nature of the decree may require or admit of it."

Title III of the Code includes Sections 213 to 253, L. O. L., inclusive and regulates "the enforcement of judgments in civil actions" by making ample provision for executions, levy and sale under execution, and redempton. Section 213, L. O. L., declares that—

"The party in whose favor a judgment is given, which requires the payment of money * * may at any time after the entry thereof have a writ of execution issued for its enforcement."

There are three kinds of executions, one of which is against the property of the judgment debtor: Section 214, L. O. L. "The writ of execution shall be issued by the clerk and directed to the sheriff," and "it shall require the sheriff to satisfy the judgment, with interest, out of" the property of the judgment debtor: Section 215, L. O. L. The writ of execution shall be returnable, within 60 days, after its receipt by the sheriff, "to the clerk's office from whence it issued." The writ is executed by the sheriff who "shall levy on the property of the judgment debtor sufficient to satisfy the judgment," and when property has been sold "he shall pay the proceeds thereof, or sufficient to satisfy the judgment, to the clerk by the day which the writ is returnable": Section 233, subds. 3 and 5. The notice

of sale, and the time, place and manner of sale are all regulated by statute: Sections 237 and 238, L. O. L. When real property is sold the sale is subject to confirmation by the court, but the judgment creditor *"shall be entitled"* to an order of confirmation unless objections are filed; and even though objections are filed and sustained the court *"shall * * direct that the property be resold,* in whole or in part, as the case may be, as upon an execution received of that date." The sheriff pays the proceeds of sale to the clerk and he in turn "shall then apply the same" on the judgment: Section 241, L. O. L.

When a decree is given in a suit, unless otherwise ordered by the court, it shall be entered by the clerk within the day it is given: Section 413, L. O. L. It is provided in Section 205, L. O. L., that immediately after the entry of a judgment in any action, the clerk shall docket the same in the judgment docket; and from the date of docketing a judgment it shall be a lien upon all the real property of the defendant within the county where the judgment is docketed during the time an execution may issue thereon. The provisions of Section 205 are made applicable to suits by the express terms of Section 413, L. O. L.

It must be remembered that the purpose of the act of 1903 (Section 426, L. O. L.), as declared in its title, is to abolish deficiency judgments; and, hence, if the procedure established by our Code neither provided for nor contemplated a deficiency judgment, then the act of 1903 accomplished nothing. The words "deficiency judgment" have a well-understood meaning when used in connection with mortgage foreclosures, for their genesis is not shrouded in doubt; and consequently when the legislature spoke of "deficiency judgments" we have a right to assume that the words

are to be accorded their generally accepted meaning. In one of it earliest forms a mortgage was made upon definite terms of forfeiture; and if the covenants were not strictly kept the title passed absolutely to the creditor, for the common law offered no redress whatever to the debtor. The severity of the common-law rule was alleviated upon the appearance of courts of equity, and in course of time the common-law courts waived their former exclusive jurisdiction and courts of equity assumed complete jurisdiction over mortgages; the "equity of redemption" finally became a definite right in every mortgagor; and no mortgage could be enforced without a decree of the chancellor; 1 Wiltsie on Mortgage Foreclosure (3 ed.), § 2. A suit for the foreclosure of a mortgage was in the nature of a proceeding *in rem:* 1 Wiltsie on Mortgage Foreclosure (3 ed.), § 8; 3 Jones on Mortgages (7 ed.), § 1711; its sole purpose was to enforce a charge on property; and the remedy was and is purely equitable: 1 Pom. Eq. Jur. (3 ed.), § 171; 4 Pom. Eq. Jur. (3 ed.), § 1413. Indeed, there was a time in the history of the law of mortgages when the sole remedy available to a mortgagee was a proceeding *in rem* against the land; but with the development of the law of mortgages and the establishment of the principle that a mortgage was only a security, bonds and notes came into use in connection with mortgages, or sometimes instead of using a bond a covenant to pay the debt was incorporated in the mortgage: 1 Wiltsie on Mortgage Foreclosure (3 ed.), §§ 215, 216; and hence the use of bonds and notes and covenants introduced a personal obligation into the transaction.

From the time when equity jurisprudence was first established courts of equity avowed and usually exercised the right to terminate litigation by settling the

whole controversy and awarding full and final relief
to the litigants; and hence one might reasonably expect
to find courts of equity exemplifying the fundamental
conception of equity jurisprudence by awarding a
judgment on the personal obligation and decreeing a
foreclosure of the mortgage in a single proceeding. A
suit to foreclose a realty mortgage, however, furnished
an exception to this general rule, for it was held that
the jurisdiction of a court of equity was confined to
the mortgage itself and the litigant was therefore rele-
gated to a law court for the enforcement of his legal
right arising out of the note or bond or covenant.
The suit on the mortgage was a proceeding *in rem*
while the action on the note or bond or covenant was
*in personam.* The equity of redemption, the interest
of the mortgagor in the land, was equitable in its
nature and foreclosable only in a court of equity; but
the obligation of the mortgagor to pay the debt was
purely legal and cognizable only in a court of law.
The mortgagee could exhaust his right on the mort-
gage and if after applying on the debt the mortgaged
property or the proceeds derived from a sale of the
mortgaged property a deficiency existed the mort-
gagee could commence and prosecute an action *in
personam* in a law court for the deficiency; and hence
when we speak of a deficiency judgment we mean a
judgment for whatever of the debt remains unpaid
after applying the proceeds of the mortgaged prop-
erty. The utmost power exercisable by a court of
equity was—not to render a personal judgment—but
to ascertain the amount of the indebtedness and decree
a sale of the mortgaged property. In order, there-
fore, to enlarge the jurisdiction of courts of equity and
to enable them to settle the legal as well as the equi-
table rights of the parties in a single proceeding in

conformity with a fundamental principle of equity jurisprudence, statutes have been enacted conferring upon courts of equity power to award judgments for any deficiency remaining after a sale of the mortgaged realty; and this power of a court of equity to render a deficiency judgment does not exist in the absence of statutory authority: *Noonan* v. *Lee,* 2 Black, 499, 509 (17 L. Ed. 278); *Orchard* v. *Hughes,* 1 Wall. 73, 77 (17 L. Ed. 560, see also, Rose's U. S. Notes); *January* v. *January,* 7 T. B. Mon. (Ky.) 542 (18 Am. Dec. 211); *Cobb* v. *Duke,* 36 Miss. 60 (72 Am. Dec. 157); *Frank* v. *Davis,* 135 N. Y. 275 (31 N. E. 1100, 17 L. R. A. 306); *Anderson* v. *Pilgrim,* 30 S. C. 499 (9 S. E. 587, 14 Am. St. Rep. 917, 4 L. R. A. 205); 2 Wiltsie on Mortgage Foreclosure (3 ed.), §§ 733, 737. It must not be understood that the mortgagee was obliged to resort to his remedy on the mortgage before commencing an action on the note or bond; for the mortgagee could if he wished pursue both remedies concurrently: *Colby* v. *McClintock,* 68 N. H. 176 (40 Atl. 397, 73 Am. St. Rep. 557); 1 Wiltsie on Mortgage Foreclosure (3 ed.), § 11; 19 R. C. L. 512.

Statutes providing for deficiency judgments are by no means uniform in their provisions, but the general result is that in a proceeding to foreclose a mortgage a judgment against the mortgagor may be rendered for any residue of the debt remaining unsatisfied after applying the proceeds derived from the sale of the mortgaged property. Usually a judgment for a deficiency is allowed only after a sale has been completed and the exact amount of the deficiency ascertained: 3 Jones on Mortgages (7 ed.), § 1709a; *Crisman* v. *Lanterman,* 149 Cal. 647 (87 Pac. 89, 117 Am. St. Rep. 167, 171); *Parmele* v. *Schroeder,* 61 Neb. 553 (85 N. W. 562, 87 Am. St. Rep. 466). The territorial

Code which became effective on May 1, 1854, contained a section providing for a pure deficiency judgment; and this section of the territorial Code continued to be the law of this jurisdiction until the adoption of the Civil Code in 1862: State Const., Art. XVIII, § 7. The territorial Code is found in the Laws of 1853 and a reprint appears in the Laws of 1855. The section governing mortgage foreclosures reads as follows:

"When a bill shall be filed for the foreclosure or satisfaction of a mortgage, the court shall have power not only to decree and compel the delivery of the possession of the premises to the purchaser thereof, but, on the coming in of the report of sale, the court shall have power to decree and direct the payment by the mortgagor of any balance of the mortgage debt that may remain unsatisfied after a sale of the premises, in the cases in which such balance is recoverable at law; and for that purpose, may issue the necessary executions, as in other cases, against other property of the mortgagor": Laws 1853, p. 181, § 57; Laws 1855, p. 203, § 57.

When construing Section 422, L. O. L., we must remember that the territorial Code provided for a genuine deficiency judgment and hence we are entitled to presume that Section 422, L. O. L., was adopted by the legislature with knowledge of the prior statute and for the purpose of effecting whatever changes may have been wrought by Section 422, L. O. L., 36 Cyc. 1146; and, moreover, this presumption is rendered especially emphatic when we are reminded that the sections of the territorial Code which provided for the procedure in actions at law and suits in equity were prepared by James K. Kelly who was one of the three commissioners selected to prepare the territorial Code and was also one of the three commissioners who

framed the Civil Code of 1862: 4 Oregon Historical
Society Quarterly, 185.

It must be understood, throughout the discussion,
that no attempt is here made to decide whether or not
a mortgagee can foreclose a mortgage by a pure pro-
ceeding *in rem,* without asking for a personal decree
for the amount of the debt: See *Eubanks* v. *Leveridge,*
4 Sawy. 274, 278 (Fed. Cas. No. 4544). In some juris-
dictions the statute provides that a personal judgment
may be rendered conditionally at the time of decreeing
a foreclosure or absolutely after the sale and ascer-
tainment of the balance due: *Springer* v. *Law,* 185 Ill.
542 (57 N. E. 435, 76 Am. St. Rep. 57). In some states
the plaintiff is not entitled to an execution for a defi-
ciency unless he obtains permission of the court after
having applied to the court for permission upon no-
tice to the defendant: 3 Jones on Mortgages (7 ed.),
§ 1709a.

Generally a judgment for a deficiency cannot be
docketed until after the ascertainment of the amount
of the deficiency, and usually a personal decree for a
deficiency does not have the force and effect of a judg-
ment at law and become a lien upon the real property
of the debtor until the excess of the debt over the pro-
ceeds derived from a sale of the mortgaged realty has
been ascertained and a subsequent judgment docketed:
2 Wiltsie on Mortgage Foreclosure (3 ed.), §§ 754, 755;
3 Jones on Mortgages (7 ed.), § 1720.

The manifest purpose of Section 422, L. O. L., was
to simplify the procedure by permitting a recovery
on the debt and a foreclosure of the mortgage in a
single proceeding in which could be rendered a single
decree covering both the note and mortgage. We
should view Section 422 with reference to the statute
which was in force prior to 1862; and it must be re-

membered that such prior statute provided for pure
deficiency judgments and that Section 422, L. O. L.,
changed the procedure by eliminating deficiency judg-
ments.   The territorial Code permitted deficiency judg-
ments, but the Civil Code abolished them by provid-
ing for a complete and unconditional judgment; and
therefore when in 1903 the legislature enacted what
has since been codified as Section 426, L. O. L., it did
nothing more than to declare that the holder of a pur-
chase price note and mortgage could not have what
the legislature had already said he could not have, be-
cause provision had been made for an absolute, full
and complete judgment, rather than a deficiency judg-
ment.   Section 426, L. O. L., was framed on the as-
sumption that a deficiency judgment could be obtained,
but that assumption was unwarranted.   There was no
such thing as a deficiency judgment in this jurisdic-
tion.   To say that Section 426, L. O. L., abolishes de-
ficiency judgments is to say that it abolishes what had
already been abolished; but to say that a holder of a
purchase price note and mortgage cannot have a de-
cree for the recovery of money as provided for by
Section 422, L. O. L., or that he cannot have an exe-
cution for the enforcement of that decree as permitted
by Sections 213 and 425, L. O. L., is, in the opinion of
the writer, to legislate judicially by saying that Sec-
tion 426 contains language not found there.   Section
426 does not say that a personal decree shall not be
entered and it does not say that an execution shall not
issue on the personal decree.   It necessarily and in-
evitably follows that a personal decree shall be en-
tered in obedience to the express command of Section
422, L. O. L., and that an execution must be issued
whenever called for by the judgment creditor under
the provisions of Sections 213 and 425, L. O. L.

Inasmuch as the power of a court of equity to render der a personal decree for money in a foreclosure proceeding is statutory, we must look to our own statutes not only for the manner in which the power shall be exercised but also for the results which flow from its exercise. If we again turn to the provisions of our Code it will be seen that a personal decree rendered in the foreclosure of a real estate mortgage is in every particular exactly like any other personal decree in a suit or judgment in an action and is accompanied with all the incidents which attend any other decree or judgment for money, with the single exception that the mortgaged land must be sold before an execution can be issued against other property owned by the debtor. When the decree of foreclosure is rendered the court "shall" award a personal decree for the whole amount of the debt. This is the one and only personal decree which the court is allowed to make. The clerk must enter this decree in the journal just as he must enter any other personal decree; he must docket this personal decree the same as he dockets any other personal decree and when docketed this decree is a lien on all the real property owned by the debtor within the county. It is true that the law requires that the mortgaged property shall be sold first, but it is also true that the proceeds of sale are then applied on the personal decree which has been rendered for the whole amount of the debt; and if the amount of the personal decree exceeds the amount of the proceeds of the sale, the creditor is entitled to enforce payment of "the decree by execution as in ordinary cases"; and the issuance of this writ of execution is not a judicial function, but it is a purely ministerial act. The law and not the court determines the kind of execution to be issued. Leave of the court is not necessary, but the writ of exe-

cution, prescribed by the law, must be issued when the
creditor requests it: *Banning* v. *Ray,* 47 Or. 119 (82
Pac, 708, 114 Am. St. Rep. 908); *In re Barker,* 83 Or.
702, 710 (164 Pac. 382); *Lane* v. *Ball,* 83 Or. 404, 428
(160 Pac. 144, 163 Pac. 975). It must be borne in
mind too, that—

"The proceedings sanctioned by statute with refer-
ence to the confirmation of the sale relate to the title
of the property and cannot be confounded with those
agencies that work an extinguishment of the judg-
ment": *Vaughan* v. *Canby Canal Co.,* 68 Or. 566, 568
(137 Pac. 784, 785).

The fact that the Code requires that, when a per-
sonal decree for money is entered in a foreclosure suit,
the mortgaged premises must be sold and the proceeds
applied on the decree before execution can be issued
against other property owned by the debtor does not
make the personal decree conditional in any respect
whatever. The decree, to the extent that it provides
for the recovery of money, is absolute and uncondi-
tional and as much so as an ordinary money judgment
rendered in an action at law. All persons will no
doubt concede that a money judgment obtained in an
action at law is absolute and unconditional; and yet
when the holder of that money judgment attempts to
compel payment by a writ of execution he must obey
the mandate of Section 215, L. O. L., and

"satisfy the judgment, with interest, out of the per-
sonal property of such debtor";

but, of course, if sufficient personal property cannot
be found the creditor can then look to the real prop-
erty of the debtor. Now, it is manifest that the fact
that the law requires the mortgaged premises to be
applied on a personal decree in a foreclosure suit be-
fore other property can be levied upon and sold does

not make such personal decree conditional any more than does the fact that the law requires the personal property of the debtor to be applied on an ordinary money judgment, obtained in an action at law, before the real property of the debtor can be levied upon and sold, make such money judgment conditional. The money judgment in an action at law is absolute and unconditional; and so, too, a personal decree in a foreclosure suit is absolute and unconditional.

In brief, at no time since 1862 have we had in this jurisdiction such a thing as a deficiency judgment or a judgment in the nature of a deficiency judgment. It is of no avail to say that it has been the practice, general or otherwise, of members of the profession to ask for and of trial courts to enter deficiency judgments; for the Code is the law and must prevail. It may be conceded that it is the duty of the court so to construe the statute as to give it effect if it can be done without resorting to judicial legislation; but it is impossible to give any effect to the act of 1903 without resorting to judicial legislation. The statute does not say that no personal decree shall be rendered at all; but it plainly contemplates that some sort of a personal decree shall be entered and the only decree provided for is the one specified in Section 422, L. O. L., and that decree so provided for is an absolute and unconditional decree for the full amount of the debt and is unhampered by any limitations whatsoever, except the single limitation that the mortgaged property shall constitute a primary fund for the payment of the decree. This limitation does not affect the character or form or amount of the decree itself, but it only fixes the order in which certain property shall be sold in satisfaction of the personal decree. To say that the act is to be construed to mean that an execution shall

not issue as provided for in Sections 213, 215 and 425,
L. O. L., is to introduce into Section 426, L. O. L.,
words which cannot be found there. It was ruled, as
already stated, in *Page* v. *Ford,* 65 Or. 450 (131 Pac.
1013, Ann. Cas. 1915A, 1048, 45 L. R. A. (N. S.) 247),
that the language of Section 426, L. O. L., did not pre-
vent the holder of a purchase price note, which was
secured by a real estate mortgage, from waiving the
mortgage and prosecuting an action on the note to a
judgment for the full amount of the debt; and, hence,
if by resorting to judicial legislation language not
found in Section 426 can nevertheless be injected into
it so as to enable the court to say that Section 426
means that if a mortgagee brings a suit in equity to
foreclose a mortgage he can only look to the mort-
gaged realty for payment of the debt, then we shall
have a situation presenting two possible alternatives;
one where the holder of the note and mortgage can
waive the mortgage, sue on the note, obtain a judg-
ment, enforce payment of that judgment in full by
levying upon and selling the real estate which has been
mortgaged as well as any other property not exempt
from execution; and the other where the holder of the
note and mortgage can maintain a suit to foreclose the
mortgage but under penalty of being confined to the
mortgaged property for payment of the debt.

The conditions which prompted the adoption of the
act of 1903 are well known to all. Many tracts of land
had been sold when the realty market was active for
more than the land was really worth, the purchaser
making a partial but substantial payment on the pur-
chase price and giving his note and a mortgage on the
land for the remainder, with the result that when real
estate values slumped, many purchasers found them-
selves unable to pay their maturing debts and conse-

quent mortgage foreclosures ended with the mortgagees retaining initial payments, reacquiring the lands and not infrequently holding judgments for a part of the purchase price of the land. This was the evil which the act of 1903 was designed to remedy; and consequently when we read the act in the light of the motive which prompted its passage: Can it be said that the legislature intended to impose a penalty upon a suit to foreclose a mortgage by confining the mortgagee to the land for his pay, and at the same time leave him unhampered in the event he elected to waive the mortgage and prosecute an action at law on the note?

In *Page* v. *Ford* counsel for F. F. Williams and Floyd W. Williams, two of the defendants, contended in their printed brief that—

"It was clearly the intention of the legislature to limit the holder of the purchase money note and mortgage to the property itself": 297 Or. Briefs (Part I), 144.

The same view is apparently entertained by counsel for the defendants here, for in their brief they state:

"We make bold to say that in our opinion the decision in *Page* v. *Ford* is not in harmony with the true spirit and intent of Section 426."

If it were permissible and competent for the members of the legislature, who participated in the adoption of the act of 1903, to testify, their testimony or at least the testimony of most of them would be, precisely as is asserted in the two briefs just mentioned, that the real intention was to confine the holder of a purchase money note and mortgage to the mortgaged lands for the satisfaction of the debt and to prevent him from enforcing payment in any proceeding whatever, whether by a suit in foreclosure or an action at

law, out of any other property than the mortgaged
lands. It is true that this intention may not be ex-
pressly manifested by the language of the statute.
The statute was no doubt framed upon the mistaken
theory that the Code provided for deficiency judg-
ments and that the creditor could not ignore the mort-
gage and sue on the note, but that he would be obliged
to prosecute a suit in foreclosure; and this erroneous
view of the law evidently accounts for the language
employed in the statute. And yet if the statute is
read in the light of the evil which prompted its pas-
sage, it is just as reasonable, if not more so, to say
that the purpose of the act was absolutely to confine
the holder of the note and mortgage to the mortgaged
land for his pay, as it is to say that the legislature in-
tended that every suitor who enters a court of equity
with a purchase money note and mortgage does so at
the risk of losing part of the money justly due him, but
if he enters a court of law he can have all the money
justly due him. A suit in equity is only a form of
procedure; an action at law is likewise a form of pro-
cedure. The legislature did not look upon a suit in
equity as an evil and an action at law as a virtue, for
each is only a form of procedure designed to accom-
plish a result.

Under the Code as it existed at the time of the adop-
tion of the act of 1903 and as it was afterward con-
strued in *Page* v. *Ford* the holder of the purchase
money note and mortgage could sue in a court of
equity, recover a personal decree for the full amount
due on the note and he could collect that personal de-
cree in full by levying upon and selling all the avail-
able property of the debtor, including the mortgaged
premises; and so, too, the same creditor could, if he
preferred, ignore the mortgage and prosecute an ac-

tion on the note in a court of law and recover a judgment for the full amount due on the note and then he could afterwards collect that judgment in full by levying upon and selling all the available property of the debtor, including the mortgaged premises. Now, the result was substantially the same whether the creditor made use of an action at law or a suit in equity. The result accomplished was the collection of the debt by applying upon it not only the mortgaged premises but also other property then owned or afterwards acquired by the debtor. The evil aimed against was furnished by the result produced by a proceeding for the collection of the debt whether such proceeding was an action at law or a suit in equity. If it was an evil to take more of the debtor's property than the mortgaged premises when suing in a court of equity it was just as much an evil to take more of the debtor's property than the mortgaged premises when suing in a court of law. If it is just and right to confine the creditor to the mortgaged premises and unjust to permit him to take additional property to satisfy the debt owing to him in a suit in equity it is likewise just and right to confine the creditor to the mortgaged premises and unjust to permit him to take additional property to satisfy the debt owing to him in an action at law. If, then, we view the statute in the light of the evil which it was designed to remedy: Is it reasonable to hold that the lawmakers intended to say to the holder of a purchase money note and mortgage—

"If you go into a court of equity and prosecute a suit in foreclosure you will be confined to the mortgaged land for your pay, even though the mortgaged land is not sufficient to pay the debt in full; while on the contrary if you ignore the mortgage and go into a court of law and sue on the note you are not confined

to the mortgaged property for your pay, but you can collect the debt in full by taking, if necessary, all the property owned by the debtor, including the mortgaged property.''

As already stated, the act of 1903 was no doubt framed upon the mistaken theory that the Code provided for deficiency judgments and that the holder of a note and mortgage had, under the then existing provisions of the Code, as his only remedy a suit in foreclosure and that he could not prosecute an action at law on the note; and hence we are justified in saying that this mistaken view accounts for the wording of the statute. The writer makes no attempt to dissent from the ruling in *Page* v. *Ford,* for he believes that the holding in that case was clearly right because, notwithstanding the real intention of the legislature, the court could not have carried out that intention without resorting to judicial legislation and writing into the statute words which were not written there by the legislature. If, on the other hand, it be assumed that the legislature intended to impose a penalty upon a creditor if he humbly submitted his claim to a court of conscience but to give him free rein if he boldly demanded his pay in a court of law, still, notwithstanding such assumed intention, it will be impossible to carry out that assumed intention without resorting to judicial legislation and arbitrarily saying that words appearing in the statute mean what they do not and cannot mean and by inserting words which the lawmakers did not write in the statute, we are confronted with a statute which, if effective at all, is either completely effective or only partially effective. If it is completely effective it will confine the holder of a purchase-money note and mortgage to the mortgaged lands, whether he sues on the note and mortgage in a

court of equity or prosecutes an action on the note in a court of law. This construction would carry out what was in truth the intention of the framers of the statute; but such a construction cannot be given to the enactment without straining and distorting the words found in it, nor without resorting to judicial legislation, a function which the judiciary cannot rightfully exercise. If the statute is made partially effective it will confine the holder of the note and mortgage to the mortgaged lands only in the event he enters a court of equity and prosecutes a foreclosure suit to a final decree. This construction, however, cannot be given to the statute without likewise straining and distorting the words found in the enactment nor without resorting to judicial legislation; and, besides, this construction imposes a possible penalty upon every holder of a purchase money note and mortgage who enters a court of equity and does not impose a like penalty upon him if he enters a court of law, a result not contemplated or intended by the legislative mind. So long as the decision rendered in *Page* v. *Ford* stands as an authoritative precedent, Section 423, L. O. L., cannot apply to an action at law brought upon a purchase money note; and the statute ought not to be held to apply solely to a suit in foreclosure, especially when this construction cannot be given to the statute without judicial legislation, and when it is not in harmony with the real purpose of the legislature and when it imposes a possible penalty upon every person who enters a court of equity and does not subject the same person to the same or any penalty at all if he enters a court of law.

When the plaintiff prosecuted the foreclosure suit to a decree he was entitled to a personal decree for the full amount due and the note became merged in

that decree so that he could not afterward prosecute an action at law on the note. Indeed, the decree which was rendered adjudges that the plaintiff recover from the defendants the full amount due on the note and it therefore constitutes a personal decree for the entire amount of the debt. The recital in the decree: "that no deficiency judgment be entered against defendants" ought to be declared void and the decree given the same effect as any other decree for the payment of money. Having reduced the note and mortgage to a personal decree and the proceeds derived from the sale of the mortgaged premises not being sufficient to satisfy the decree, the plaintiff ought to be permitted to enforce payment as in the case of any other personal decree or judgment for the payment of money. The judgment should be affirmed.

BENSON, J., concurs.

BURNETT, J., Concurring Specially.—It was settled by the opinions in the former case that when the plaintiff bought a note secured by mortgage of even date therewith, he was charged with what knowledge he might have obtained by inquiry prompted by the contents of the public records to which his attention was directed by the fact that the mortgage was recorded and that he could not excuse himself under these circumstances for having failed to learn that the obligations covered part of the buying price of realty. The matter, therefore, about his having purchased in good faith and the like is not available in aid of his action. As to the attorney fee, the makers of the note promised to pay "such additional sum," which means but one attorney fee. It has been allowed in the foreclosure suit to recover on the note and the record dis-

closes that it has been paid out of the proceeds of the resulting sale. That portion of the obligation to pay, contingent though it was, has been fulfilled. Having thus liquidated the single sum promised in that behalf, the defendants are not liable to further exaction on that account.

We come now to the consideration of the demurrer to the complaint. The question presented for our decision is whether the foreclosure of a purchase-money mortgage exhausts all remedy which the plaintiff has for the collection of the debt represented by a promissory note given for such a liability and thus secured. Both parties appear to treat the decree in the foreclosure suit as having merely the legal effect to subject the land to the payment of the debt, the plaintiff contending that the application of the proceeds of sale under foreclosure, which were less than the amount of the claim, must be considered as so operating only *pro tanto,* while the defendants maintain that it worked out a full satisfaction of the debt. Without regard to the mere wording of the former decree, we will treat the question as presented by the parties and determine whether or not the holder of such a negotiable instrument is precluded by the former decree from collecting a deficiency remaining after the application of the proceeds of the sale towards the discharge of the debt. If nothing else appears the rule is that in a foreclosure suit a personal decree must be rendered against the maker or other person liable upon a promissory note or other personal obligation secured by the mortgage sought to be foreclosed: Section 422, L. O. L. This statutory precept has always been qualified by Section 429, L. O. L., reading thus:

"During the pendency of an action at law for the recovery of a debt secured by any lien mentioned in

Section 422, a suit cannot be maintained for the foreclosure of such lien, nor thereafter, unless judgment be given in such action that the plaintiff recover such debt or some part thereof, and an execution thereon against the property of the defendant in the judgment is returned unsatisfied in whole or in part."

A further modification was annexed by the act of February 24, 1903, Laws 1903, page 252, entitled "An act to abolish deficiency judgments upon the foreclosure of mortgages to secure the unpaid balance of purchase price of real property," reading thus:

"When judgment or decree is given for the foreclosure of any mortgage, hereafter executed, to secure payment of the balance of the purchase price of real property, such judgment or decree shall provide for the sale of the real property, covered by such mortgage, for the satisfaction of the judgment or decree given therein, and the mortgagee shall not be entitled to a deficiency judgment on account of such mortgage or note or obligation secured by the same."

This statute was codified as Section 426, L. O. L.

Based upon the title, which exercises a controlling influence over the body of the act, it is plain that the enactment refers only to suits in equity and cannot affect other litigation which might theretofore have been lawfully employed for the collection of the debt. This is the doctrine of *Page* v. *Ford,* 65 Or. 450 (131 Pac. 1013, 35 Ann. Cas. 1048, 45 L. R. A. (N. S.) 247). In that case it was decided in substance that notwithstanding a note was secured by mortgage on real property, the holder was not restricted exclusively to his remedy by foreclosure in equity but might maintain an action at law upon the note itself independent of the mortgage.

The effect of Section 429, L. O. L., is that if a mortgagee begins on the law side of the court he cannot,

during the pendency of the action nor thereafter until execution on his judgment has been returned unsatisfied in whole or in part, resort to equity. His right to relief in chancery is suspended until he exhausts his legal remedy. Correspondingly by Section 422, if he begins in equity he must work out that process to its end, and as by that section he obtains a personal decree for what is due on the promissory note or other personal obligation involved, there is no occasion for his going into the law court to obtain a judgment for what is lacking of complete satisfaction of his debt. The claim is merged in the personal decree and complete relief may be had on execution issued thereon. There cannot be two judgments for the same demand, in the same court, between the same parties.

The resultant of the varied legislative acts relating to debts secured by mortgage is further to separate the procedure at law from that in equity in litigation to recover the purchase price of realty, payment of which is secured not only by the direct personal promise of the debtor, but also by a collateral mortgage upon the land bought. As to that class of debts, its effect is confined to the procedure to realize upon them and does not alter the right of the buyer to agree to pay for the property a certain sum of money absolutely and at all events. Respecting purchase price liability, the concurrency of the remedies is restricted on one hand to the extent that if a judgment at law has been rendered, a foreclosure suit cannot be maintained until the law execution has been returned unsatisfied in whole or in part; while on the other, in such cases, the chancellor properly may not invade the province of the law court by rendering afterwards and in addition to the personal decree required by Section

422, L. O. L., a deficiency judgment upon which an execution, as at law, would issue as formerly for the satisfaction of a balance remaining after applying to the liquidation of the debt the proceeds of sales under execution issued on the original decree. In other words, the two remedies in such instances, the one by action at law on the note and the other by suit in equity for foreclosure, are made successive rather than strictly concurrent. The common-law rule that both proceedings may be carried on simultaneously is thus modified as to procedure, but the right ultimately to recover the entire debt is not impaired. That these statutes, being in derogation of the common law, must be strictly construed, is to follow a well-established canon of interpretation.

Besides all this, the title to the act of 1903 relating to deficiency judgments confines its operations to foreclosure suits. It makes no allusion to actions at law and does not pretend to restrict the theretofore established right to sue at law for the recovery of the debt. A deficiency judgment is one rendered in the foreclosure suit, but only after sale of the mortgaged realty has been effected and the proceeds found to be insufficient to discharge the debt secured: 1 Words and Phrases, Second Series, p. 1271; 3 Jones on Mortgages (7 ed.), § 1709a. Under Section 422, L. O. L., requiring in mandatory language that the court "shall also decree a recovery of the amount of such debt against such person" who gave a note or other personal obligation for the payment of the debt, there never can be a deficiency judgment in the true sense of the term. Suppose, after the return of the sheriff reporting the sale of the land under foreclosure, the plaintiff should apply to the equity court to render a judgment for

what was lacking of full satisfaction, the answer would be:

"You already have a personal decree for your whole debt; you cannot have another in the same suit; look to your execution for relief."

Section 426, L. O. L., against deficiency judgments is only declaratory in negative form of what has always been the rule derived from the plain meaning of Section 422, L. O. L.

According to the writer's observation of the practice in this state under Section 422, extending over a period of more than forty years, the procedure is to take a personal decree for the debt evidenced by the note or other like obligation and an additional decree for the sale of the property and the application of the proceeds to the satisfaction of the debt. There is no occasion for inserting in the decree a clause granting an execution for the remainder. That follows by operation of law under the second subdivision of Section 425, L. O. L., reading thus:

"When the decree is against the defendants or any one of them in person, and the proceeds of the sale of the property upon which the lien is foreclosed is not sufficient to satisfy the decree, as to the sum remaining unsatisfied the decree may be enforced by execution as in ordinary cases, * * ."

This is in consonance with Section 415, L. O. L., making the general statute on executions applicable to the enforcement of decrees so far as the nature of the decree may require or admit of it.

The two remedies, the one at law and the other in equity, are not inconsistent, but, on the contrary, supplement each other. While there can of course be but one satisfaction, neither remedy impairs the efficacy of the other to the end that the fulfillment of the law-

ful promise of the debtor to pay absolutely and at all events may be accomplished. If the term "waive" properly may be applied to the act of the creditor in commencing a suit instead of an action, or *vice versa,* it is only a temporary waiver in the light of the statutes and loses its force with the exhaustion of the remedy first chosen without full satisfaction of the debt.

The rule on that subject is thus enunciated in 19 R. C. L., page 509, Section 305:

"As a general rule, the taking of collateral security for the payment of a debt does not afford any implication that the creditor is to look to it only or primarily for the payment of the debt. The obligation of the debtor to respond in his person and property is the same as if no security had been given. This is the settled rule at law. Therefore, a creditor holding a note secured by a mortgage may ignore his security and bring an action on the note. The promise to pay as evidenced by a promissory note is one distinct agreement, and, if couched in proper terms, is negotiable, while the pledge of real estate to secure that promise as evidenced by a mortgage is another distinct agreement which is not intended to affect in the least the promise to pay, but only to provide a remedy for the failure of performance."

The precept is thus taught in 27 Cyc. 1758:

"Where the proceeds of a foreclosure sale are not sufficient to satisfy the mortgage debt, and plaintiff did not recover a deficiency judgment in the foreclosure suit, or was prevented from doing so by want of authority in the court to grant it, want of jurisdiction over the defendant, or other cause, he may thereafter maintain an action at law against the person liable for such deficiency, basing his action either on the note or bond secured by the mortgage or on the foreclosure judgment, or simply on the indebtedness arising from

the foreclosure, and the failure of its proceeds to extinguish the original debt or claim."

It is clearly lawful for one to buy land from another and give his promissory note in payment of the whole or a part of the purchase price without executing any mortgage or other security in connection therewith. It is equally as competent for the buyer of such realty to give a mortgage upon it, so conditioned that it shall be void upon the payment of a certain sum of money, representing part of the purchase price, but without assuming any personal liability. Each contract, the one personal and the other by pledge, is lawful and is not inconsistent with the other. All that our statute has said is that if the creditor begins the exercise of either remedy, he must pursue it to exhaustion. In short, the legislation of this state has not gone to the extreme of saying that giving of collateral security by mortgage impairs the obligation voluntarily assumed by the debtor of paying absolutely and at all events the purchase price of realty. *Colby* v. *McClintock*, 68 N. H. 176 (40 Atl. 397, 73 Am. St. Rep. 557), and other like cases are precedents sustaining the right to use both remedies so far as necessary to collect the whole debt.

Even in states where it is provided that there shall be but one form of action for the foreclosure of a mortgage and the collection of a debt secured thereby, the practically universal holding is that the effect of such legislation is merely to require the creditor to exhaust the mortgage security before proceeding at law as he may properly do to recover any deficiency in the payment of the debt: *Boucofski* v. *Jacobsen*, 36 Utah, 165 (104 Pac. 117, 26 L. R. A. (N. S.) 898); *Clark* v. *Paddock*, 24 Idaho, 142 (132 Pac. 795, 46 L. R. A. (N. S.)

475) ; *Sacramento Bank* v. *Copsey,* 133 Cal. 663 (66 Pac. 8, 85 Am. St. Rep. 242) ; *Blumberg* v. *Birch,* 99 Cal. 416 (34 Pac. 102, 37 Am. St. Rep. 67) ; 2 Jones on Mortgages (7 ed.), §§ 1215, 1218, 1220–1222, 1227, 1228.

The legislative department of government by its enactments mentioned has not made the promissory note in question an unlawful contract. Neither has it stigmatized with illegality the mortgage to secure the same, and until it has done so those who voluntarily execute such contracts must comply with them according to their terms.

The argument is fallacious to the effect that Section 426, L. O. L., should be liberally construed in favor of those who would acquire homes and give mortgages for some, if not all, of the purchase price. The practical result of that doctrine would be to obstruct the acquisition of homes, for if it be understood that the would-be purchaser lawfully may repudiate his direct promise to pay the contract price absolutely and at all events, as evidenced by his promissory note, property owners will not deal with him. Taken in connection with the rule established in *Page* v. *Ford,* 65 Or. 450 (131 Pac. 1013, Ann. Cas. 1915A, 1048, 45 L. R. A. (N. S.) 247), another consequence of the construction for which the opinion of the late Mr. Justice MOORE contends, would be to drive mortgagees to the law side of the court in the first instance to recover judgment, with its attendant costs and expenses. This would not release the mortgage, and while it might delay, yet it would not preclude its foreclosure by a subsequent suit as allowed by Section 429, L. O. L., quoted above. Especially in cases where the debtor resides in one county and the mortgaged land is in another, judgment might be taken, an execution issued in the law action in the county of his residence and returned un-

satisfied, leaving the way open to the foreclosure in the other county at the additional expense, and burdening the debtor with two proceedings where one would answer the purpose. Such a result cannot be avoided without judicial legislation incorporating in the statute terms not included by the law-making power.

In the case at bar the Circuit Court had before it a complaint which discloses that the plaintiff already has a personal decree for the full amount of his debt, the unsatisfied portion of which can be collected by execution as in ordinary cases, by authority of Sections 415 and 425, L. O. L. No appeal from this decree seems to have been taken by the defendants. Right or wrong in the first instance, it is at this juncture valid because rendered by a competent tribunal having jurisdiction of the litigants and of the subject matter. The plaintiff's demand was merged in that decree both as against the debtors themselves and as against the mortgaged realty. He has no present cause of action on that claim. He could get nothing more by an additional judgment. The matter is *res judicata.* His remedy is by the issuance of an execution on that decree "as in ordinary cases." Hence the Circuit Court was right in sustaining the demurrer to the complaint and its decision should be affirmed.