Argued April 23, affirmed October 14, 1919.

## LADD & TILTON BANK *v.* MITCHELL.

(184 Pac. 282.)

**Mortgages—What Constitutes "Purchase-money Mortgage" Entitled to Priority of Liens.**

1. Generally, mortgage executed by purchaser contemporaneously with acquirement of legal title, or afterwards as part of same transaction, is a "purchase-money mortgage," regardless of whether executed to vendor or third person, and entitled to preference as such over all other claims or liens arising through the mortgagor though prior in point of time.

**Mortgages—What Constitutes "Mortgage to Secure Payment of the Balance of the Purchase Price."**

2. A mortgage executed to "secure payment of the balance of the purchase price," within Section 426, L. O. L., providing that upon foreclosure of such mortgage, mortgagee shall not be entitled to deficiency

judgment against purchaser, is a mortgage given concurrently with a conveyance of land, by purchaser to vendor, on the same land, to secure the unpaid balance of the purchase price, and a mortgage executed by purchasers to vendor's mortgagee in consideration of the latter's release of the land purchased from its mortgage is not within the statute.

From Multnomah: GEORGE W. STAPLETON, Judge.

In Banc.

This is a suit by Ladd & Tilton Bank against defendants McKinley Mitchell and wife and Lewis-Wiley Hydraulic Company to foreclose a first mortgage on certain real property. The complaint is in the usual form and asks that in the event the amount received upon the sale of the real property be insufficient to satisfy the demand of plaintiff, it have judgment against defendants Hattie Mitchell and McKinley Mitchell, and each of them, for the deficiency. The defendants Hattie Mitchell and McKinley Mitchell filed an answer admitting the allegations of the complaint, and setting up certain facts which they claim exempt them from the operation of any judgment for any balance that may remain after the proceeds of the sale of the real property described in the mortgage.

The trial court rendered a decree in favor of plaintiff, and the Mitchells appeal from that portion of the judgment and decree which is as follows:

"That if, after the application of the proceeds of sale of said real property in the manner aforesaid, any deficiency remains upon the judgment herein rendered and obtained by plaintiff, that plaintiff have execution against the defendants Hattie Mitchell and McKinley Mitchell, or either of them, and against the property of them or either of them, to satisfy in whole or in part any such deficiency."

The cause was submitted upon the following stipulation of facts:

"It is hereby stipulated by and between the parties hereto, by and through their respective attorneys of record, that the following facts are to be considered as true on the trial of the above entitled case:

"1. That on and prior to the 3d day of October, 1912, Lewis-Wiley Hydraulic Company, an Oregon corporation, owned and held absolute title to lots two (2) and three (3) in block ten (10), Westover Terraces, an addition to the City of Portland, Multnomah County, Oregon, according to the duly recorded maps and plats thereof, and that on or prior to said date, to wit, the 3d day of October, 1912, Lewis-Wiley Hydraulic Company had borrowed certain moneys from Ladd & Tilton Bank, and as security therefor had executed a blanket mortgage unto Ladd & Tilton Bank on all of the property owned by Lewis-Wiley Hydraulic Company, including in said blanket mortgage the property above described, to wit, lots two (2) and three (3) in block ten (10) Westover Terraces aforesaid. That said blanket mortgage was to secure Ladd & Tilton Bank for the repayment of moneys actually advanced by the said Ladd & Tilton Bank to said Lewis-Wiley Hydraulic Company and used by said Lewis-Wiley Hydraulic Company for its corporate purposes; the said blanket mortgage so executed by the Lewis-Wiley Hydraulic Company was not in fact a purchase money mortgage and said property was never owned by Ladd & Tilton Bank.

"2. That on or about the 3d day of October, 1912, Lewis-Wiley Hydraulic Company sold to Hattie Mitchell and McKinley Mitchell, the defendants above named, said lots two (2) and three (3) in block ten (10), Westover Terraces, for the total purchase price of $6,750, paying $750 in cash unto the Lewis-Wiley Hydraulic Company and, at the request of Lewis-Wiley Hydraulic Company, Hattie Mitchell and McKinley Mitchell executed a first mortgage on said lots in favor of the plaintiff, Ladd & Tilton Bank, for $3,375 the said mortgage being the mortgage which is described in the complaint filed herein; and as a further portion of the consideration Hattie Mitchell and

McKinley Mitchell executed a mortgage for $—— in favor of Lewis-Wiley Hydraulic Company to secure the payment of the balance of the consideration due Lewis-Wiley Hydraulic Company.

"3. For the purpose of permitting the Lewis-Wiley Hydraulic Company and Hattie Mitchell and McKinley Mitchell to consummate the purchase of the real property, as in paragraph 2 of this stipulation set forth, Lewis-Wiley Hydraulic Company requested Ladd & Tilton Bank to apportion to lots two (2) and three (3) in block ten (10), Westover Terraces aforesaid, such amount of the general indebtedness due unto Ladd & Tilton Bank from the Lewis-Wiley Hydraulic Company as should be proper and suitable in the premises and, pursuant to said request, Ladd & Tilton Bank did apportion to said lots two (2) and three (3) in block ten (10), Westover Terraces aforesaid, from the general indebtedness due from Lewis-Wiley Hydraulic Company to Ladd & Tilton Bank, the sum of $3,375. The Lewis-Wiley Hydraulic Company, as a consideration for the segregation of said indebtedness by Ladd & Tilton Bank as aforesaid, did represent to Ladd & Tilton Bank that Hattie Mitchell and McKinley Mitchell would assume and pay such proportion of said segregated indebtedness and as evidence of said obligation of Hattie Mitchell and McKinley Mitchell to pay such proportion of such segregated indebtedness due unto Ladd & Tilton Bank from the Lewis-Wiley Hydraulic Company did execute the mortgage in the sum of $3,375, the same being the mortgage more particularly described and set forth in the complaint filed in this cause.

"4. Hattie Mitchell and McKinley Mitchell were informed by the Lewis-Wiley Hydraulic Company of the fact that Ladd & Tilton Bank had a general blanket mortgage on the property known and described as Westover Terraces, and particularly lots two (2) and three (3) in block ten (10) thereof, which mortgage was to secure the repayment of moneys theretofore loaned by Ladd & Tilton Bank to Lewis-Wiley Hydraulic Company.

"5. That the mortgage in favor of Ladd & Tilton Bank was executed by Hattie Mitchell and McKinley Mitchell in consideration of the release by Ladd & Tilton Bank of lots two (2) and three (3) in block ten (10), Westover Terraces, aforesaid, from the security of the Lewis-Wiley Hydraulic Company as hereinbefore set forth and from the blanket mortgage executed to Ladd & Tilton Bank as hereinbefore set forth, and the repayment of the security afforded Ladd & Tilton Bank by said blanket mortgage.

"6. At the time that Hattie Mitchell and McKinley Mitchell executed the note for $3,375 and gave a first mortgage on lots two (2) and three (3) in block ten (10), Westover Terraces aforesaid, as security for the same, the Lewis-Wiley Hydraulic Company was not released from the liability for the repayment of the moneys theretofore loaned by it unto the Lewis-Wiley Hydraulic Company, but at the time of the execution of said note and mortgage by Hattie Mitchell and McKinley Mitchell and contemporaneously therewith, and at the time of the lodging of the same with Ladd & Tilton Bank, the Lewis-Wiley Hydraulic Company did execute the following guarantee on the back of the note, in words and figures as follows, to wit:

" 'For value received Lewis-Wiley Hydraulic Company hereby guarantees the payment of the within note and waives protest, demand and notice of nonpayment thereof.

" 'Lewis-Wiley Hydraulic Company,
" 'By W. C. Morse,
" ' 'Vice-President.'

"Upon the foreclosure of a mortgage executed, 'to secure payment of the balance of the purchase price of real property' * * 'the mortgagee shall not be entitled to a deficiency judgment.' "

Affirmed.


For appellants there was a brief over the name of *Messrs. Manning & Slater,* with an oral argument by *Mr. Woodson T. Slater.*

For respondent there was a brief over the name of *Messrs. Wood, Montague, Hunt & Cookingham,* with an oral argument by *Mr. P. W. Cookingham.*

BEAN, J.—The only issue in this case is whether the plaintiff is entitled to a judgment for any balance that may remain due after the application of the proceeds of the sale of the real property described in the mortgage. It is contended on behalf of defendants Hattie Mitchell and McKinley Mitchell, whom we will hereafter designate as defendants, as Lewis-Wiley Hydraulic Company, the other defendant, did not answer or appeal; that under the provisions of Section 426, L. O. L., the plaintiff is not entitled to a judgment for such balance or as it is termed, "a deficiency judgment." The provisions of this section of our Code are as follows:

"When judgment or decree is given for the foreclosure of any mortgage, hereafter executed, to secure payment of the balance of the purchase price of real property, such judgment or decree shall provide for the sale of the real property, covered by such mortgage, for the satisfaction of the judgment or decree given therein, and the mortgagee shall not be entitled to a deficiency judgment on account of such mortgage or note or obligation secured by the same."

The transaction delineated by the stipulation was of the same force and effect as though Ladd & Tilton Bank had loaned to the Mitchells $3,375, Lewis-Wiley Hydraulic Company guaranteeing payment thereof, and then the Mitchells had paid the same to the Lewis-Wiley Hydraulic Company, and that company in turn had paid the same to Ladd & Tilton Bank. Instead of taking such a circuitous route, a three-cornered transaction was made. It might be stated that in effect the

Mitchells assumed and agreed to pay to Ladd & Tilton Bank a portion of the money the Lewis-Wiley Hydraulic Company had borrowed from Ladd & Tilton Bank. The Mitchells were not purchasers of the lots from Ladd & Tilton Bank; Ladd and Tilton Bank were not the sellers of the lots. The mortgage was not executed by the Mitchells "to secure the payment of the balance of the purchase price of real property" within the meaning of the statute. The original debt of the Lewis-Wiley Hydraulic Company to Ladd & Tilton Bank was for money loaned by the bank to that company. The mortgage given by the Mitchells to Ladd & Tilton Bank was in effect given for a loan.

1. The position of the defendants is that the mortgage was a purchase-money mortgage. We think that it may be conceded that it is a general rule, to which there is little dissent, that a mortgage on land executed by the purchaser of the land contemporaneously with the acquirement of the legal title thereto, or afterwards, but as a part of the same transaction, is a purchase-money mortgage, and entitled to preference as such over all other claims or liens arising through the mortgagor though they are prior in point of time; and this is true without reference to whether the mortgage was executed to the vendor or to a third person: 19 R. C. L., § 196, p. 416; *Marin* v. *Knox,* 117 Minn. 428 (136 N. W. 15, 40 L. R. A. (N. S.) 272, and note).

But this rule is of little assistance in determining the question in the case at bar involving a construction of Section 426, L O. L., which was adopted for a different purpose.

The decisions, holding that if a loan is secured by a mortgage given on property purchased with the money lent, then such mortgage is a purchase-price mortgage were for the benefit of the mortgagee and not to his

detriment.  In other words, the courts have construed such mortgages as purchase-price mortgages in order to secure to the mortgagee the full amount of the money advanced.  In several jurisdictions, however, it is held that such mortgages are not purchase-price mortgages: *Heuisler* v. *Nickum,* 38 Md. 270; *Eyster* v. *Hatheway,* 50 Ill. 521 (99 Am. Dec. 537).  In *Heuisler* v. *Nickum,* 38 Md. 270, it was said:

"The terms 'purchase money,' do not include any money that may be borrowed to complete a purchase, but that which is stipulated to be paid by the purchaser to the vendor, as between them only it is purchase money; as between the purchaser and lender, it is borrowed money."

2. A purchase-money mortgage is defined in 32 Cyc., at page 1267, as follows:

"A mortgage given, concurrently with a conveyance of land, by the vendee to the vendor, on the same land, to secure the unpaid balance of the purchase price": Citing Black's Law Dictionary.

While this definition is not the universal one, it seems to us that in enacting Section 426, L. O. L., the legislature acted with the kind of purchase-money mortgage in view, as defined above; that is, that the purpose of the law was to encourage and protect the purchaser of real estate, which perchance is made for the purpose of obtaining a home; that it was not the intent of the lawmakers to render it more difficult for such a purchaser to obtain a loan and pay the cash for a home, and receive the benefit of any lower price of the realty that might be made on account of such cash payment.  That if the law should be so construed that anyone obtaining a loan and giving a real estate mortgage to a third party not the vendor of the land to secure the payment thereof, when it was contemplated

that the money so borrowed should be used in payment for the real property purchased at the time, would be executing a mortgage "to secure payment of the balance of the purchase price of real property," within the purview of the statute, and that the lender could only look to the property upon a foreclosure proceeding, then the person wishing to purchase a home or other real property, would be hampered and his credit impaired, and it might well be said that: "The last state of that man is worse than the first." In such event, the beneficent purpose of the law would be thwarted. It must be considered that the bank was not speculating in real estate in the transaction; it was doing a banking business. It was not the purpose or the intent of the law to regulate banking business or the loaning of money. The ordinary transactions of a bank do not come within the provisions of the act.

Whatever may be the construction of the section referred to when applied to a mortgage executed by a vendee to a vendor to secure the payment of the balance of the purchase price of real property, we believe that it was not the intention of the legislature that mortgages like the one in question in the present case should come within the provisions of Section 426, L. O. L. The decree of the lower court is therefore affirmed.                                        AFFIRMED.

JOHNS, J., not sitting.

BURNETT, BENSON and HARRIS, JJ., concur in the result.