Argued January 17; affirmed April 9, 1935

## SECURITY & INVESTMENT CO. OF OREGON CITY *v.* HACKETT ET AL.

(42 P. (2d) 916)

*Charles T. Sievers,* of Oregon City, for appellants.

*Arthur G. Beattie,* of Oregon City (Schuebel & Beattie, of Oregon City, on the brief), for respondent.

ROSSMAN, J. January 28, 1921, two individuals named Graves bought 82 acres of land from M. D. Latourette. Twenty-five hundred dollars was paid upon the purchase price, and for the balance ($4,150) Latourette accepted a note signed by the Graves and their wives, secured by a mortgage which described not only the tract just mentioned but also another tract of 11½ acres owned by the Graves. The note was payable six years after date. One of the provisions of the mortgage permitted the mortgagors to cut the timber upon the land, provided they paid to Latourette the sum of $1 per cord for all timber removed. Shortly after this transaction had been consummated the Graves defaulted through failure to pay Latourette the charge of $1 per cord, and still later defaulted in the payment of interest and taxes. June 2, 1926, the Graves conveyed the 82-acre tract to the defendant Hackett, and at that time the latter and his wife, who are the two defendants (appellants), signed a note in the sum of $3,750, payable three years hence, to M. D. Latourette, secured by a mortgage signed by the two Hacketts, which described the aforementioned 82-acre tract. It is this note and mortgage which are the subject-matter of this suit. Concurrently with the delivery of this note and mortgage, Latourette wrote upon the record of the Graves' mortgage the following signed by himself: "Having

received full and complete satisfaction and payment of the sum secured by this mortgage, I do hereby release the same." The deed from the Graves to the defendants, in its covenant against encumbrances, stated: "* * * except a balance due of $3,750.00 on a mortgage recorded at page 487 in Book 125, Record of Mortgages of said County which E. A. Hackett hereby assumes and agrees to pay." At the same time the Graves sold their 11½-acre tract to some stranger to this record for $1,100. Hackett was a dealer in wood and purchased the 82 acres for the purpose of cutting the timber and converting it into fuel. The brief submitted by the defendants to this court states: "Here we have a tract of land, as the testimony shows, of value only for its timber." The manner in which the amount of the Hackett note was fixed at $3,750 is not clearly indicated by the record. The sole evidence upon that subject is the following: About the time that the 82-acre tract was conveyed to the defendants, the Graves paid to Latourette $600 of the $1,100 which they had derived from the sale of the 11½-acre tract, and the defendants paid to Latourette $250 cash, besides delivering to him their note for $500 payable to a bank operated by him. The record indicates that much of this cash was consumed in the payment of taxes and overdue interest. Evidently after the disbursements had been made the parties found that $3,750 remained unpaid upon the Graves-Latourette note. Latourette assigned the defendants' note and mortgage to the plaintiff. This mortgage, like the first, contains a provision permitting the mortgagor to cut the timber upon payment to Latourette of the sum of $1 per cord. Hackett testified that when this transaction was consummated Latourette delivered to him no cash whatever. He also swore that when he signed the note and mortgage he did not

believe that he was rendering himself personally liable, explaining, "I just figured I was taking over this other obligation. Mr. Graves was about to lose it." Latourette testified that when Graves and Hackett came to an understanding they "wanted to know if I would loan him [Hackett] the money for it. I said. I would, but had to make a new mortgage. I made up this mortgage and figured Hackett was going to pay it. He said—well, to the effect he was worth $40,000 to $50,000 which was proved later by Bradstreet". When asked what became of the money which he loaned to Hackett, he explained: "As I remember, he paid off the mortgage of Graves, and the interest and taxes." Later, he testified that his recollection was not clear and that it was possible that he did not actually hand any money to Hackett. He swore that when he cancelled the Graves mortgage and accepted the Hackett note and mortgage he believed that Hackett had rendered himself personally liable upon the obligation. We quote from his testimony the following: "It was considered by me to be a new mortgage * * * Yes, sir. I figured Hackett was worth $40,000 or $50,000, and I was making a pretty good deal to get a better risk and the thing would be paid eventually."

It is agreed that the defendants' note and mortgage are in default.

Section 6-505, Oregon Code 1930, provides:

"When judgment or decree is given for the fore-closure of any mortgage, hereafter executed, to secure payment of the balance of the purchase price of real property, such judgment or decree shall provide for the sale of the real property, covered by such mortgage, for the satisfaction of the judgment or decree given therein, and the mortgagee shall not be entitled to a deficiency judgment on account of such mortgage or note or obligation secured by the same."

The sole issue before us is whether the Hackett-Latourette mortgage is a purchase price mortgage.

It will be observed from the foregoing review of the evidence that Latourette sold nothing to the defendants. It will also be observed that the Graves did not sell to Hackett everything they had purchased from Latourette because before they conveyed the tract to the defendants they had removed from it some of the timber which was standing upon it when they bought it. According to the defendants, the tract possessed "value only for its timber". It will also be observed that the price ($4,500) which the defendants agreed to pay was materially less than the price ($6,650) the Graves agreed to pay. Apparently, the difference between these two sums does not represent the value of the timber which the Graves had removed. The evidence does not indicate whether $3,750 is the balance which the Graves neglected to pay on their note and mortgage. It will also be observed that while payment of the Graves note was secured by a mortgage which described two tracts of land, the defendants' mortgage described only the 82-acre tract. It will also be recalled that when the defendants delivered to Latourette their note and mortgage he cancelled the Graves note and mortgage by endorsing upon the record a statement that he had received "full and complete satisfaction and payment of the sum secured" by the Graves obligation. Until he executed this instrument he could have maintained an action upon the note, disregarding the mortgage: *Page v. Ford*, 65 Or. 450 (131 P. 1013, 45 L. R. A. (N. S.) 247, Ann. Cas. 1915A, 1048). Latourette did not receive the full proceeds from Graves' sales of the 11½-acre tract. Another item of difference between the Graves-Latourette note and mortgage and the defendant-Latourette note and. mortgage is this: the note signed by the de-

fendants concludes with the following words: "* * * hereby waiving all rights under the laws of the State of Oregon to exemption of Homestead or other property." These words are not found in the Graves-Latourette note and mortgage.

If the defendants' note and mortgage are purchase money obligations, the words just quoted amount to nothing. In the solution of our problem they have meaning because they indicate that the defendants must have intended to render themselves personally liable. It is true that the defendant Hackett testified that he did not believe he was assuming any liability when he signed the note, but he did not communicate his interpretation of the effect of the transaction to Latourette, and the latter evidently kept his conclusions to himself. Under the circumstances, we believe that the problem whether the defendants have rendered themselves personally liable must be determined from the instruments which they signed and the aforementioned statute, rather than from their beliefs.

Evidently, Latourette did not hand to the defendants $3,750 in cash when the note and mortgage were signed by the latter, but he did, however, (a) write upon the mortgage records a satisfaction of the Graves obligation, and (b) accept defendants' note. These are accommodations which the defendants desired. In legal contemplation, it is immaterial that Latourette did not hand to the defendants $3,750 in view of the fact that he extended to them $3,750 credit, thereby enabling them to complete their transaction with the Graves. The situation in *Ladd & Tilton Bank v. Mitchell*, 93 Or. 668 (184 P. 282, 6 A. L. R. 1420), may be briefly related as follows: The Lewis-Wiley Hydraulic Company owned a Portland sub-division upon which the bank had a blanket mortgage. It was not a purchase money mortgage. The

defendants desired to purchase two lots within the tract. The bank, in order to enable the owner to sell these two lots, made an apportionment of the mortgage indebtedness, and, discovering that $3,375 was the amount against the two lots, agreed that it would take from the defendants their note and mortgage for that sum, endorsed by the Lewis-Wiley Company, and then would release the two lots from the blanket mortgage. This was done and the sale was consummated. When the bank undertook to foreclose its note and mortgage the defendants claimed that the obligation was a purchase money one and that, hence, a deficiency judgment was not obtainable. In holding to the contrary, this court reasoned thus:

"The transaction delineated by the stipulation was of the same force and effect as though Ladd & Tilton Bank had loaned to the Mitchells $3,375, Lewis-Wiley Hydraulic Company guaranteeing payment thereof, and then the Mitchells had paid the same to the Lewis-Wiley Hydraulic Company, and that company in turn had paid the same to Ladd & Tilton Bank."

In the present instance, if a shortcut had not been taken Latourette would have handed to the defendants $3,750 in money when they delivered their note and mortgage to him; then the defendants would have handed that sum to the Graves as the purchase price (or a part of it) of the land; and, finally, the Graves would have delivered the $3,750, together with other moneys, to Latourette who would thereupon have cancelled the Graves-Latourette mortgage. Had the money been passed around in that circle no one would contend that Latourette's relationship to the transaction was that of a vendor. The handling of the money should not be necessary to identify Latourette as a lender if the transaction itself fixes his character as such.

■ We have not overlooked *Black v. Sippy,* 15 Or. 574 (16 P. 418), and *Pearce. v. Buell,* 22 Or. 29 (29 P. 78), cited by the defendants. In these two decisions this court held that acceptance of a note is not payment of an obligation unless there is an agreement that the note be accepted as such. Both of these decisions recognize the rule that if the parties intend that the new note should constitute payment of the old, the courts will so regard it. It is well established that the creditor's acceptance of a third party's note, under an agreement to receive it as payment of an existing note, discharges the original debtor: 48 C. J., Payment, p. 622, § 58.

It seems to us that the transaction. between the Graves and the defendants was not a mere extension of the preceding transaction between the Graves and Latourette, but that it was a new sale. Less was involved in the second sale than in the first—the amount of timber was less and the purchase price was less.

■ The question now confronts us, was the $3,750, made payable to Latourette by the defendants' note, "the balance of the purchase price" of the 82-acre tract and therefore subject to the provisions of § 6-505, or was it something else. The $3,375 involved in *Ladd & Tilton Bank v. Mitchell* was the amount of the unpaid purchase price of the lots. However, it was not due to the bank as purchase money but as a loan. We believe that the same is true in the present suit. When the defendants agreed to buy this land a large sum was due to Latourette from the Graves upon the purchase price of this land. The defaulted character of that obligation displeased the defendants, and thereupon Latourette satisfied upon the mortgage records that obligation, releasing, while so doing, the Graves from all further liability, and also releasing his lien upon the 11½-acre tract. The

slate having been wiped clean, a new transaction was initiated in which Latourette participated, not as a vendor but as a lender of money.

We are satisfied that the note and mortgage involved in this suit are not purchase price obligations, but are evidences of a loan. Such being our conclusion, it follows that the note and mortgage are not subject to § 6-505, Oregon Code 1930.

The decree of the circuit court will, therefore, be affirmed. Costs and disbursements will be allowed to neither party.

KELLY and BELT, JJ., concur.

BAILEY, J., concurs in the result.

CAMPBELL, C. J., not sitting.