Argued November 4, 1964, reargued May 6, affirmed as
modified July 15, 1965

# MAGNOLIA LUMBER CORPORATION, INC. *v.* LITHIA LUMBER COMPANY, INC. ET AL

404 P. 2d 190

*Frank A. Bauman,* Portland, argued and reargued the cause for defendant and appellant. With him on the briefs were Donald H. Pearlman and Keane, Haessler, Bauman and Harper, Portland, and Jones and Reeder, Medford.

*A. Allan Franzke,* Portland, argued and reargued the cause for plaintiff and respondent. With him on the brief were Ridgway K. Foley, Jr., and Mautz, Souther, Spaulding, Kinsey & Williamson, Portland.

No appearance for defendants and respondents.

Before McALLISTER, Chief Justice, and PERRY,

SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

PERRY, J.

The plaintiff Magnolia Lumber Corporation brought this suit to foreclose its mortgage executed by the defendant Lithia Lumber Company, Inc., and others who claimed to have some right, title or interest in or to the mortgaged property. The trial court found that defendant Lithia was in default under the terms of the mortgage contract and that it was indebted thereunder in a certain sum of money. A decree was thereupon entered decreeing that plaintiff was entitled to recover from defendant Lithia certain sums of money, that the real and personal property be sold, and further "that in the event the proceeds from said sales are insufficient to satisfy any of said judgments, herein found and determined, then such judgment creditor shall have execution against the defendant Lithia Lumber Company for any deficiency in the judgments rendered herein after the application thereto of the proceeds from the sale of said real and personal property."

From the decree entered, defendant Lithia has appealed.

The facts are that defendant Lithia was organized by the former employees of Magnolia Lumber Corporation for the purpose of purchasing the property in question and operating the same as it had been used in the past for the manufacture of lumber. In September, 1952, plaintiff leased its lumber mill to defendant Lithia under an agreement whereby Lithia was to pay as rental the sum of $6 per thousand board feet produced by the defendant at the mill. The lumber

so manufactured was to be sold through Magnolia Lumber Sales Co., a partnership, of which Mr. R. Drew Lamb, president of Magnolia Lumber Corporation, was a partner.

In September, 1953, an agreement was entered into between the plaintiff and defendant Lithia whereby Lithia purchased the land, buildings, machinery, trucks and equipment necessary to the operation of the mill for the sum of $910,000, upon which was credited the rental based upon the prior agreement in the sum of $144,798.68.

Pursuant to this agreement, on December 1, 1953, plaintiff made and executed in a single instrument its warranty deed to the real property and bill of sale to the personal property, the consideration recited therein being $765,204.31.

On the same date, Lithia executed in a single instrument its mortgage upon the real and personal property conveyed by plaintiff. This mortgage contained a copy of the note executed by Lithia, which is as follows:

"$765,204.31     Ashland, Oregon, September 1, 1953

"For value received, LITHIA LUMBER COMPANY promises to pay to the order of MAGNOLIA LUMBER CORPORATION, INC., at Ashland, Oregon, SEVEN HUNDRED SIXTY-FIVE THOUSAND TWO HUNDRED FOUR and 31/100 DOLLARS, in lawful money of the United States of America, with interest, payable as hereinafter set forth. Maker of this note shall pay unto the payee hereof a sum equivalent to $6.00 per thousand feet board measure for all lumber manufactured by the Lithia Lumber Company in its sawmill at Ashland, Oregon, which sum is to be held out from sales of such lumber manufactured by the maker, and is to be credited monthly on the principal, provided, that payee cannot require the payment of more than $153,040.86 in any one year, and in no

event can the payee require the payment of a sum in excess of $6.00 per M. for all lumber manufactured in the sawmill of maker at Ashland, provided, however, that if the full sum of $153,040.86 shall be paid each year, then no interest shall be charged, but the maker shall pay interest at the rate of 6% per annum, payable annually, on such sum as the $6.00 per M. payments shall fail of paying $153,040.86 per annum. In other words, if only $100,000.00 is paid in any year, the balance of $53,040.86 would be subject to interest at the rate of 6% per annum until paid. The date from which interest would accrue shall be September 1st of each year hereafter. It is understood that all lumber manufactured by the maker shall be sold through Magnolia Lumber Sales Company, which will hold out and pay over to the payee herein the $6.00 per M. required hereunder.

"In the event suit or action is instituted to collect this note, or any portion thereof, it promises to pay a reasonable sum as attorney's fees, together with the costs and disbursements pertaining thereto.

"Lithia Lumber Company

By Paul K. Folks  President
and
By Charles O. Davis  Secretary"

In May, 1956, there was due and owing upon the debt from defendant Lithia to plaintiff Magnolia the sum of $672,555.84, and it was agreed between the parties that the balance was to be paid in five equal yearly installments of $134,511.17. The minutes of the Lithia Lumber Company as to this agreement read as follows:

"The purpose of our meeting was to verify our verbal agreement with Magnolia Lumber Corp. changing our system of payment from the per thousand basis to a yearly payment. After lengthy

discussion a motion was made by Mr. Rodgers that the board of directors ratify and confirm the action taken by Mr. Folks in regards to the verbal agreement between him and Mr. R. Drew Lamb, president of Magnolia Lumber Corp. wherein the existing contract of sale between Lithia Lumber Co. and Magnolia Lumber Corp. Inc. was modified to provide that the $6.00 per thousand basis payment be changed to a lump sum yearly payment in the sum of $134,511.16 to be paid September 1, 1955, and the sum of $134,511.17 to be paid up to and including September 1, 1956 and a like amount to be paid September 1, each year thereafter up to and including September 1, 1959, said action to be considered as the action of the Lithia Lumber Co. from the date of said oral modification. Motion was seconded by Mr. Owens. Voted and passed."

■ The defendant Lithia first assigns as error the trial court's refusal to adopt its requested finding to the effect, since the note provided that the debt it evidenced was to be paid from a particular fund and such a fund did not exist, there was no commitment of the general credit of the defendant.

Assuming defendant's contention to be true, that the note provided the debt was to be retired from a particular fund, the evidence above clearly shows a subsequent modification of the prior agreement.

We know of no law in this state which prevents the parties from subsequently modifying or changing their prior agreement, and the defendant cites none.

We find no merit in this assignment of error.

The defendant's principal contention is that the trial court erred in entering a decree which authorized a deficiency judgment against defendant for the entire debt remaining "after the application thereto of the proceeds from the sale of said real and personal property."

ORS 88.070 reads as follows:

"When a decree is given for the foreclosure of any mortgage given to secure payment of the balance of the purchase price of real property, the decree shall provide for the sale of the real property covered by such mortgage for the satisfaction of the decree given therein, but the mortgagee shall not be entitled to a deficiency judgment on account of the mortgage or note or obligation secured by the same."

■ It is well established, if the mortgage involved in this suit falls within the purview of this statute, the trial court would be in error in decreeing a deficency judgment, for, if the statute applies, a trial court lacks the power to make such an order. *Stretch v. Murphy,* 166 Or 439, 112 P2d 1018.

The trial court in its "Opinion, Findings and Conclusions" found that Lithia had segregated in its ledger sheet, with the notation "Mortgage payable Magnolia Lumber Corporation, Inc.," the value of its purchased property as follows:

| | |
|---|---|
| Land | $ 58,000.00 |
| Buildings | 126,220.95 |
| Equipment & Machinery | 577,077.85 |

It is the contention of the defendant Lithia that this is a purchase-money mortgage for real property and the inclusion of the personal property therein does not change the character of the transaction and render inapplicable ORS 88.070. Its argument is to the effect, since there is a single debt which may not be segregated and since real property has been purchased, the statute applies to the entire transaction and no deficiency judgment may be entered.

■ The difficulty with this argument is that the statute applies only to the purchase of real property

and is intended to grant relief to the purchasers of real property only. *Wright v. Wimberly,* 94 Or 1, 184 P 740; *Ladd & Tilton Bank v. Mitchell,* 93 Or 668, 184 P 282, 6 ALR 1420.

By no stretch of the imagination can we read into this statute a legislative intent to grant relief to purchasers of personal property.

The statement of Professor Glenn in 2 Glenn, Mortgages 874-75, § 160, has no application to the facts of the case before us. He states:

> "It may happen, of course, that a debt is secured, not only by a mortgage of land, but also by personal property. * * * The ultimate fact is that the debt is secured partly by land and partly by goods, and the question is, what effect have the moratory statutes in this case of mixed security? The point arises because, generally speaking, the laws we have discussed apply, by their terms, to mortgages of real estate, leaving chattel mortgages and pledges where they were. But where a single debt is supported by both kinds of collateral, how far can our statutes regulate the foreclosure?
> "* * * * *
> "The answer seems plain. As there is but one debt, although supported by different types of security, the mortgagee may, if he pleases, foreclose upon all the security in one suit. If he does, the deficiency judgment laws apply because land was one of the items of security; and so the mortgagee's right to a deficiency judgment is then and there decided. The collateral is gone, he has no deficiency judgment, and thus his relations with the mortgagor are severed entirely."

The citations supporting the statement refer to the purchase of real property alone and a debt for that purchase secured by both the real property and chattels.

As previously pointed out, under the facts of this case, the debt here created was for the purchase of both real and personal property.

■ Where a note and mortgage is given for the purchase of both real and personal property, we are not persuaded that a court of equity should not, after a sale of the properties, determine what portion of the debt created was for the purchase of real property and apply the statute to that portion of the debt, and likewise determine that portion of the debt created for the purchase of the personal property and permit a deficiency judgment as to the personal property, should this occur.

■ This does not mean that there may not be a unitary sale of all of the property. But in the case of a unitary sale, should there be a deficiency, the trial court will be required to determine the deficiency allowable as to the personal property. This may be done by the trial court first determining the purchase price of the real property and the purchase price of the personal property. The court should then determine the proportional amount of the judgment debt remaining due as to each type of property on the basis of the percentage ratio each type of property bears to the original purchase price. After a sale of all of the property, if sold in a unitary sale, the trial court should then determine that portion of the amount received from the sale that is attributable to the sale of the real property and the amount attributable to the sale of the personal property. Since no deficiency may be allowed as to the real property, the amount found by the court attributable to the sale of the personal property would then be deducted from the debt remaining due on the purchase price of the personal

property and the remaining amount is that upon which a deficiency is allowable.

◼ In heretofore setting out the segregated values of personal and real property as shown upon the ledger sheet of the defendant Lithia, we do not intend to intimate that these figures were in fact the values for each type of property as agreed upon between the parties at the time of sale. The record before us is not complete enough for this determination and we are, therefore, remanding this cause to the trial court for that determination.

Affirmed as modified.

GOODWIN, J., dissenting.

It must be remembered that the mortgagee had the option, in preparing the mortgage, to place all the desired security under a single mortgage, or to place the personal property under a chattel mortgage and the land under a real-property mortgage. It would appear that both orderly procedure and certainty in the law would best be served by treating the mortgage as a purchase-money mortgage upon land. A mortgagee need not mingle land and personal property in a single mortgage. If he does so, the matter of a deficiency ought to be governed by the rules of law applying to the foreclosure of mortgages on land. These rules are well settled, and are calculated to serve the legitimate ends of both parties fairly and fully. The segregation of the two classes of security after foreclosure in order to apply to each class a separate deficiency remedy will be a difficult, expensive, and wasteful task. The difficulty in which the trial court is placed by the majority opinion could have been avoided by using two mortgages. I would hold the mortgagee to his election and treat the whole transaction as one within ORS 88.070.